## Diana Folia

| | |
|---|---|
| **From:** | James Hardin |
| **Sent:** | Wednesday, December 26, 2007 4:01 PM |
| **To:** | Phillips Jr., Robert D. |
| **Cc:** | Evans, Thomas A.; Rakesh Amin; Frieden, Jamie L.; Scott Ferrell; Scot Wilson; Matt Orr; Diana Folia; Barbara Anderson; 'RIV03-01.DB@ds.calljensen.com' |
| **Subject:** | RE: Rivera v. BSN |

Bo:

I hope you and your family are having a nice holiday. I am writing in response to your December 19, 2007 email and to briefly address several important issues.

### A. BSN's Answer And Ferguson's Motion to Dismiss

*First* and as a preliminary matter, we have received Defendant Bio-Engineered Supplements & Nutrition, Inc.'s ("BSN") answer to the complaint, as well as Defendant Chris Ferguson's ("Ferguson") Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction and accompanying declaration. I would like to briefly touch upon a couple of issues and questions regarding BSN's answer as well as Ferguson's motion to dismiss.

**1.    Under Fed. R. Civ. P. 8(b)(6), By Failing To Admit Or Deny The Allegations In Paragraphs 18, 44, 45, 46, 47 And 48 Of Plaintiffs' Complaint In BSN's Answer, BSN Has Admitted These Allegations**

In "short and plain terms," an answer must admit or deny each material allegation raised in the complaint. Fed. R. Civ. P. 8(b)(1)-(2). "An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6). BSN's answer fails to admit or deny the allegations set forth in paragraph 18 of the complaint, which paragraph contains the allegations underpinning Plaintiffs' entire complaint. Significantly, paragraph 18 alleges:

> BSN promises that its products contain a new and improved form of Creatine that it supposedly invented, while in fact selling products that contain only basic Creatine. In reality, there is no CEM3 in these products and thus BSN's claims that its products are superior to competitors' products due to the existence of CEM3 are false, misleading, and fraudulent. Moreover, these false claims are made knowingly and willfully by BSN, who claims to be the creator and owner of alleged patent rights in this product.

Pls. Compl., ¶ 18. BSN also failed to admit or deny other key factual allegations in the complaint. For example, BSN failed to admit or deny the allegations set forth in paragraphs 44, 45, 46, 47, and 48. "By failing to submit an answer or other pleading denying the factual allegations of [paragraphs 18, 44, 45, 46, 47, and 48 of the] complaint, [BSN has] admitted those allegations, thus placing no further burden upon Plaintiff[s] to prove its case factually." *Burlington Northern R.R. Co. v. Huddleston*, 94 F.3d 1413, 1415 (10th Cir.1996) (applying former Fed. R. Civ. P. 8(d) which, like Fed. R. Civ. P. 8(b)(6), provided that "[a]verments in a pleading to which a responsive pleading is required ... are admitted when not denied in the responsive pleading."). *See also U.S. for Use and Ben. of B & R, Inc. v. Donald Lane Constr.*, 19 F.Supp.2d 217, 220 (D. Del. 1998) (noting that "all allegations not denied are deemed admitted[.]"); *Porter v. U.S. Dept. of Army*, 1995 WL 461898, *4 (N.D. Ill. 1995) (reasoning that "[a] failure to answer implies a failure to deny, which [Fed. R. Civ. P. 8(b)(6)] transforms into an admission."

**2.    BSN Should Explain How It Can In Good Faith Deny Plaintiffs' Allegation That There Is No CEM3 In The Products When It Has No Test Results Confirming That CEM3 Is Actually In The Products And Has Received No Such Test Results From**

**Exhibit 1**

**Its Product Supplier/Manufacturer In China**

A denial of factual contentions must be based "on the evidence or, if specifically so identified, . . . based on belief or a lack of information." Fed. R. Civ. P. 11(b)(4). *See also* Fed. R. Civ. P. 8(b)(3)-(5). Notably absent from BSN's answer is any clear and unequivocal admission or denial – even one based on "information and belief" – as to whether the subject BSN products do or do not contain Creatine Ethyl Ester Malate (i.e. CEM3). Plaintiffs have already undertaken testing on BSN products and have confirmed that the products do not contain any such ingredient. To the extent BSN denies Plaintiffs' allegation, BSN should explain what "evidence" or other good faith basis it has for denying such allegations, particularly in light of the fact that you have already confirmed that:

    (1)    As of the filing of Plaintiffs' complaint, BSN never tested the BSN products to confirm whether they contained CEM3;

    (2)    As of the date of our meeting on December 7th, BSN still had not tested any of the products to determine whether they actually contained CEM3 (despite at that time, describing Plaintiffs' allegations as "frivolous" and "meritless");

    (3)    To date, BSN still has no test results confirming that the BSN products actually contain any CEM3 (despite waging an Internet blitzkrieg campaign disputing all of the allegations in Plaintiffs' complaint and implicitly reassuring customers that the BSN products contain CEM3);

    (4)    Notwithstanding that BSN products sport "Made In The USA" packaging, the ingredients in the BSN products are actually provided by a supplier in China – a supplier that has not provided BSN with any test results validating that BSN products actually contain CEM3, as BSN advertises.

In light of these facts, coupled with international growing concern that BSN clearly has little grasp or control of what ingredients its China supplier is *actually* putting its in products, please let us know BSN's basis for denying Plaintiffs' allegation that there is no CEM3 in the subject BSN products.

In addition, please let me know whether the Cellmass product that BSN sold in Australia, subject to a recent recall there, is the same as the Cellmass product that BSN sells or has sold in the United States. Among other things, please let me know if the Cellmass product BSN sells or sold in the US contains the same Coumarin noted by the Australian regulatory body. If not, please let me know specifically how the ingredients in the products sold in Australia differ from the products sold in the US.

### B.    Ferguson's Motion To Dismiss For Lack Of Personal Jurisdiction

*Second*, regarding Ferguson's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, Plaintiffs would like to conduct some preliminary discovery regarding the personal jurisdiction issues (i.e., Ferguson's contacts with California, etc.), including a brief deposition of Ferguson. Please let us know whether Defendants are agreeable to promptly providing Plaintiffs the opportunity to undertake such discovery. I am available to take this deposition on January 4, 7-11, or 14-16. Please let me know at your earliest convenience.

### C.    There Is No Apparent "Patent Pending" For CEM3 And BSN Still Has No Evidence That There Is Any Such Substance In Any Of Its Products

*Third*, your December 19th email suggests that Plaintiffs' allegation that BSN does not have a patent pending for CEM3 is false. However, based on our research and investigation, and confirmed by the documents (incidentally, not the entire file wrapper) that you provided in informal discovery, there is no patent pending for any CEM3 ingredient by BSN. As a preliminary matter, BSN is not even the *applicant* in the application you provided. Aside from that, the documents you provided demonstrate that there were 20 *method* claims pending

and all 20 claims were denied – the first ten were denied twice, and none for the actual CEM3 *ingredient/substance*. Furthermore, we were surprised by your statement that "[t]here is nearly a century of literature discussing [CEM3]." Most notably, it defies explanation that BSN could possibly obtain a patent for an ingredient for which there is over 100 years of prior art (i.e., literature). *See* 35 U.S.C. § 101; *see also* MPEP.

It has been our clear understanding from our prior correspondence that neither you nor BSN are aware of any tests confirming whether or not any BSN products actually contain CEM3. Your December 19th email specifically states that Defendants "hope to be able to complete the testing of some initial samples by the end of the month." Obviously we will demand that our experts have the opportunity to test every sample that is ultimately tested by Defendants. Until Defendants actually complete tests of their own products, however, we suggest that you temper any unfounded accusations or allegations involving Rule 11 sanctions. To the extent you or your clients are in possession of any such test results showing that CEM3 exists and is present in the BSN products, please provide such evidence immediately.

### D. Under C.D. Cal. L.R. 83-1.3.1, It Would Not Be Appropriate To File A Notice Of Related Cases As The Relatedness Requirements Are Not Met And Consolidation Would Not Be Proper Under Fed. R. Civ. P. 42(a)

*Fourth*, without providing any written explanation of your own as to why Defendants believe the cases are related, you have asked for us to provide Plaintiffs' "position in writing as to why the cases are not related and why a notice should not be filed." Under Central District, Local Rule 83-1.3.1, the filing of a notice of related cases should only be filed where there is another action previously filed or currently pending in the Central District that: (a) "arise[s] from the same or a closely related transaction, happening or event;" or (b) "call for determination of the same or substantially related or similar questions of law and fact;" or (c) "[f]or other reasons would entail substantial duplication of labor if heard by different judges;" or (d) "involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c is present." C.D. Cal. L.R. 83-1.3.1. Furthermore, the notice of related cases must "also include a brief factual statement setting forth the basis for the attorney's belief that the action qualifies for related case transfer." *Id*.

In sum, we cannot in good faith file a notice of related cases because this action and the Bio-Engineered Supplements & Nutrition, Inc. v. Lopez, et al. case do not meet the test for relatedness under Local Rule 83-1.3.1 and are not suitable for consolidation under Federal Rule of Civil Procedure 42(a). As an initial matter, in our December 7 meeting I believe you said that you would substitute in as counsel for BSN in that other matter, and indicated that you were considering simply dismissing that case outright. Thus, I don't think that tenuous and quite different case can serve as a fulcrum for moving this case.

More importantly, I don't believe the cases are "related" pursuant to Fed. R. Civ. P. 42(b) because:

(1)  The two actions do not involve common issues of fact or law - instead they involve different parties, different claims, different facts, different evidence, and different procedural vehicles;

(2)  The handling of both cases by the same judge is not likely to result in a substantial savings of judicial time and effort;

(3)  The earlier case has progressed to a point where designating this action as related and appropriate for consolidation would likely delay the proceedings in both cases substantially;

(4)  The cases are not susceptible to disposition in a single proceeding – substantive and procedural issues in connection with discovery, motion practice, and expert discovery are vastly different in the two cases;

    (5)      There is no risk of inconsistent adjudications or judgments; and

    (6)      Consolidation would create a substantial risk of prejudice and confusion.

Defendants' agenda appears aimed solely at delaying Plaintiffs' motion for class certification, which will be brought well within the mandatory timeline set forth by Local Rule 23-3. If you believe a notice of related cases should be filed or otherwise feel consolidation under Rule 42(a) is appropriate, please let us know. As it stands, Defendants have not stated any factual or legal reason as to why they believe a notice of related cases should be filed or why consolidation is warranted. To the extent you remain "inclined to believe that such a notice should be filed[,]" please provide us with a factual and/or legal basis for your position in writing.

### E.    Plaintiffs Will Comply With Their Document Retention And Preservation Obligations And Defendants Are Expected To Do The Same

*Fifth*, Plaintiffs and their counsel will comply with their discovery and document preservation and retention obligations. We expect BSN, Mr. Ferguson and Defendants' counsel to do the same. As we emphasized during our initial meeting, we expect you to take all necessary steps to ensure that Defendants comply with their discovery and document preservation obligations, including preserving samples of the products (from 2003 to the present) and all potentially relevant documents, emails, other ESI, handwritten notes, correspondence, voicemail messages, test results, assays, governmental (national and international) warning letters and recalls, etc., including those same materials and documents located in China.

### F.    In Accordance With C.D. Cal. L.R. 23-3, Plaintiffs Intend To Promptly Move For Class Certification

*Sixth* and finally, and continuing with our meet and confer conference on December 7th, this correspondence shall further confirm Plaintiffs' intent to proceed with a motion for class certification in accordance with Local Rule 23-3.

The certification issues are fairly straightforward and generally beyond dispute. As a starting point, the *numerosity* requirement, *see* Fed. R. Civ. P. 23(a)(1), appears to be beyond any legitimate dispute. You admitted during our meeting on December 7th that you believed that the class was likely "50,000 to 100,000" people and given BSN's sales figures, including $160,000,000 in 2007 sales attributable to these products, we believe that the ultimate size of the class may be larger. The Rule 23(a)(2) *commonality* requirement is also easily met. In addition, Plaintiffs' claims are *typical* of the class. *See* Fed. R. Civ. P. 23(a)(3).

Finally, we understand from your December 19th correspondence that Defendants intend to argue that Call, Jensen & Ferrell is inadequate class counsel under Rule 23(a)(4). Aside from actions taken in public fora which we cannot control, Mr. Lopez is not giving private support or encouragement to this lawsuit or our firm. I am not sure how our firm's prior representation of Lopez creates a conflict or is somehow a basis for arguing that our firm is not an adequate class counsel. I am not aware of any authority indicating that merely representing one participant in an industry somehow bars a firm from serving as class counsel. Indeed, I think such a rule would be against public policy because it would categorically preclude a lot of good cases from being brought with no benefit to the public. I understand from your client's barrage of press releases that you are intent on making such an argument, but I would like to know the legal and factual bases for such a position at your earliest convenience.

In general, to the extent we can informally agree that any of the other Rule 23(a) elements are met, please let me know.

The driving force behind Plaintiffs' class action is a desire to enjoin Defendants' false and misleading advertising (i.e., promising that BSN products contain a revolutionary form of creatine when, in fact, it does not and without even having tested the products to verify the veracity of their own claims). Accordingly, Plaintiffs

intend to seek class certification under Rule 23(b)(2) as Defendants have "acted or refused to act on grounds generally applicable to the class." Fed. R. Civ. P. 23(b)(2). If Defendants believe that class certification pursuant to Rule 23(b)(2) is not warranted, please provide us with your thoughts and the basis for your position. Finally, in addition to Rule 23(b)(2), Defendants will seek class certification pursuant Rule 23(b)(3), as both "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). To the extent you disagree, please let us know why. We would greatly appreciate your response at your earliest possible convenience.

If you have any questions, comments, or would like to further discuss any of these items or would like to try to informally resolve this matter, please let us know as we are generally available to discuss anytime.

Regards,

James

**James Hardin**
*Shareholder*
**CALL, JENSEN & FERRELL**
610 NEWPORT CENTER DRIVE, SUITE 700
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE: (949) 717-3000
FACSIMILE: (949) 717-3100
jhardin@calljensen.com
www.calljensen.com

The preceding email message (including any attachments) contains information that may be confidential, protected by the attorney-client or other applicable privileges, or constitutes non-public information. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system. Use, dissemination, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

**James Hardin**
*Shareholder*
**CALL, JENSEN & FERRELL**
610 NEWPORT CENTER DRIVE, SUITE 700
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE: (949) 717-3000
FACSIMILE: (949) 717-3100
jhardin@calljensen.com
www.calljensen.com

The preceding email message (including any attachments) contains information that may be confidential, protected by the attorney-client or other applicable privileges, or constitutes non-public information. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system. Use, dissemination, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

**From:** Phillips Jr., Robert D. [mailto:RPhillips@ReedSmith.com]
**Sent:** Wednesday, December 19, 2007 2:42 PM
**To:** James Hardin
**Cc:** Evans, Thomas A.; Rakesh Amin; Frieden, Jamie L.; sfarrell@calljensen.com
**Subject:** Rivera v. BSN

James-

We are going ahead with our motion to dismiss Mr. Ferguson and our answer on behalf of BSN. Please review the motion and let us know if you will reconsider your decision not to dismiss Mr. Ferguson.

Also please take a closer look at the patent issue now that you have extensive documentation on that point. Regardless of what you believe to be the significance of the pending application, it is quite clear that the allegations in the complaint are in error on this point.

I would suggest that the allegations that CEM3 does not exist likewise should be dropped. There is nearly a century of literature discussing this substance, and it seems both odd and frivolous for you to be making this particular allegation. Dropping that allegation should not affect in any way your central claim that CEM3 was not present in some or all of the shipments in question.

On the central issue, we hope to be able to complete the testing of some initial samples by the end of the month.

On the "related case issue", we would like your position in writing as to why the cases are not related and why a notice should not be filed. While we are holding off on filing our own notice at this time, we are inclined to believe that such a notice should be filed.

Finally, as I explained in our meeting on December 7, your firm's prior relationship with the defendants in the Lopez matter raises two important and related issues in the class action:

(1) whether your very recent representation of other parties involved in the supplement industry who sought to impair BSN's reputation raises a conflict of interest in connection with your current role as putative class counsel in the consumer class action;

(2) whether your prior clients in the Lopez matter have supported or encouraged in any way the filing and prosecution of the consumer class action.

For this reason, I requested on December 7 and reiterated now my request that your firm preserve all documents and emails reflecting or constituting any communications with your prior clients relating to BSN, its products, any test results, and any payments of fees to your firm by those clients. That preservation should include voicemail messages as well as emails, other ESI, and hard copy documents. While we understand that you may wish to assert privilege objections to the production of such evidence, we believe that it may be relevant to the pending class action and therefore insist that it be retained until the court has had an opportunity to review the issues.

I will in the SF office for the rest of this week and during Thursday and Friday of next week. If we do not speak this week, let's try to connect next week if you are around.

-Bo


Robert D. Phillips, Jr.
(415) 659-5965  (San Francisco)
(213) 457-8311  (Los Angeles)
rphillips@reedsmith.com
www.reedsmith.com
# Reed Smith LLP

Two Embarcadero Center

Suite 2000

San Francisco, California 94111

(415)  543-8700

(415)  391-8269 (fax)


355 South Grand Avenue

Suite 2900

Los Angeles, California 90071

(213)  457-8000

(213)  457-8080  (fax)


2/1/2008

* * *

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

* * *

To ensure compliance with Treasury Department regulations, we inform you that, unless otherwise indicated in writing, any U.S. Federal tax advice contained in this communication  (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or applicable state and local provisions or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

Disclaimer Version RS.US.1.01.03
pdc1

## Diana Folia

| | |
|---|---|
| **From:** | Phillips Jr., Robert D. [RPhillips@ReedSmith.com] |
| **Sent:** | Sunday, December 30, 2007 8:20 AM |
| **To:** | James Hardin |
| **Cc:** | Evans, Thomas A.; Rakesh Amin; Frieden, Jamie L.; Scott Ferrell; Scot Wilson; Matt Orr; Diana Folia; Barbara Anderson; RIV03-01.DB@ds.calljensen.com |
| **Subject:** | RE: Rivera v. BSN |

James-

I am available to talk on Wednesday afternoon.  I will have at least one of my partners on the phone as well, as there appears to be a problem with your interpretation of what I have said to you previously.  While I am willing to continue to work through issues by discussing case management and discovery matters, I am not willing to be on the receiving end of correspondence that purports to "confirm" things that I have never said.  Each of the four items below in #2 which you claim to have been "confirmed" by me or by BSN is either a mischaracterization of what I have said or is an outright falsehood.

Your refusal to drop the allegations on the pending patent is an indication that you are not litigating in good faith.  I explained at our meeting that it was a process or method patent application, and you now have documented confirmation of that fact.  Final action on the patent has not been taken, so it is clearly pending (and was pending at the time that plaintiffs' apparently pruchased their BSN products).  You also are aware that BSN's advertising refers to the patent application as being for the process, not for ingredients.  So there is no basis for the current allegations regarding the patent application.

Likewise, the refusal to dismiss Chris Ferguson is pure harrassment.  There is no factual or legal basis for claims against him.  I would ask you again to dismiss him from the case.  If you are only willing to dismiss without prejudice pending discovery, that would be acceptable to us.  But as you will see if you conduct discovery on the point, it is a baseless claim, and for now, it only stands to delay the progress of the litigation.

We will address the Rule 23 issues at an appropriate time.  We do not intend to brief those issues in email exchanges.  We also do not intend to debate issues which are not framed in the complaint (such as coumarin).  We also do not intend to provide voluntary, unilateral discovery "immediately" as your email requests.  The record thus far indicates that you are not acting in good faith with respect to information that we are supplying, so it is best that we follow the federal rules for discovery.

Your analysis of the related case issue is unconvincing.  We are conferring with the client about whether we should file a notice of related case.

We also are considering whether to request an early status conference with Judge Selna to discuss the related case issue and to work through the case management issues.  If our good faith efforts to describe our client's positions and our understanding of the evidence adduced to date are going to be met with more mischaracterizations and refusals to drop baseless claims, it is probably best that we deal with case management issues on the record before the judge.

Let me know if you would be available for an early conference with Judge Selna on the 14th (the day originally set for our motion to dismiss Ferguson).

Robert D. Phillips, Jr.
(415) 659-5965  (San Francisco)
(213) 457-8311  (Los Angeles)
rphillips@reedsmith.com
www.reedsmith.com

## Reed Smith LLP

Two Embarcadero Center
Suite 2000
San Francisco, California 94111

2/1/2008

**Exhibit 2**

(415) 543-8700

(415) 391-8269 (fax)

355 South Grand Avenue
Suite 2900
Los Angeles, California 90071
(213) 457-8000
(213) 457-8080 (fax)

---

**From:** James Hardin [mailto:jhardin@calljensen.com]
**Sent:** Wednesday, December 26, 2007 4:01 PM
**To:** Phillips Jr., Robert D.
**Cc:** Evans, Thomas A.; Rakesh Amin; Frieden, Jamie L.; Scott Ferrell; Scot Wilson; Matt Orr; Diana Folia; Barbara Anderson; RIV03-01.DB@ds.calljensen.com
**Subject:** RE: Rivera v. BSN

Bo:

I hope you and your family are having a nice holiday. I am writing in response to your December 19, 2007 email and to briefly address several important issues.

### A.  BSN's Answer And Ferguson's Motion to Dismiss

*First* and as a preliminary matter, we have received Defendant Bio-Engineered Supplements & Nutrition, Inc.'s ("BSN") answer to the complaint, as well as Defendant Chris Ferguson's ("Ferguson") Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction and accompanying declaration. I would like to briefly touch upon a couple of issues and questions regarding BSN's answer as well as Ferguson's motion to dismiss.

#### 1.  Under Fed. R. Civ. P. 8(b)(6), By Failing To Admit Or Deny The Allegations In Paragraphs 18, 44, 45, 46, 47 And 48 Of Plaintiffs' Complaint In BSN's Answer, BSN Has Admitted These Allegations

In "short and plain terms," an answer must admit or deny each material allegation raised in the complaint. Fed. R. Civ. P. 8(b)(1)-(2). "An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6). BSN's answer fails to admit or deny the allegations set forth in paragraph 18 of the complaint, which paragraph contains the allegations underpinning Plaintiffs' entire complaint. Significantly, paragraph 18 alleges:

> BSN promises that its products contain a new and improved form of Creatine that it supposedly invented, while in fact selling products that contain only basic Creatine. In reality, there is no CEM3 in these products and thus BSN's claims that its products are superior to competitors' products due to the existence of CEM3 are false, misleading, and fraudulent. Moreover, these false claims are made knowingly and willfully by BSN, who claims to be the creator and owner of alleged patent rights in this product.

Pls. Compl., ¶ 18. BSN also failed to admit or deny other key factual allegations in the complaint. For example, BSN failed to admit or deny the allegations set forth in paragraphs 44, 45, 46, 47, and 48. "By failing to submit an answer or other pleading denying the factual allegations of [paragraphs 18, 44, 45, 46, 47, and 48 of the] complaint, [BSN has] admitted those allegations, thus placing no further burden upon Plaintiff[s] to prove its case factually." *Burlington Northern R.R. Co. v. Huddleston*, 94 F.3d 1413, 1415 (10th Cir.1996) (applying former Fed. R. Civ. P. 8(d) which, like Fed. R. Civ. P. 8(b)(6), provided that "[a]verments in a pleading to which a responsive pleading is required ... are admitted when not denied in the responsive pleading."). *See also*

*U.S. for Use and Ben. of B & R, Inc. v. Donald Lane Constr.*, 19 F.Supp.2d 217, 220 (D. Del. 1998) (noting that "all allegations not denied are deemed admitted[.]"); *Porter v. U.S. Dept. of Army*, 1995 WL 461898, *4 (N.D. Ill. 1995) (reasoning that "[a] failure to answer implies a failure to deny, which [Fed. R. Civ. P. 8(b)(6)] transforms into an admission."

> **2.** **BSN Should Explain How It Can In Good Faith Deny Plaintiffs' Allegation That There Is No CEM3 In The Products When It Has No Test Results Confirming That CEM3 Is Actually In The Products And Has Received No Such Test Results From Its Product Supplier/Manufacturer In China**

A denial of factual contentions must be based "on the evidence or, if specifically so identified, . . . based on belief or a lack of information." Fed. R. Civ. P. 11(b)(4). *See also* Fed. R. Civ. P. 8(b)(3)-(5). Notably absent from BSN's answer is any clear and unequivocal admission or denial – even one based on "information and belief" – as to whether the subject BSN products do or do not contain Creatine Ethyl Ester Malate (i.e. CEM3). Plaintiffs have already undertaken testing on BSN products and have confirmed that the products do not contain any such ingredient. To the extent BSN denies Plaintiffs' allegation, BSN should explain what "evidence" or other good faith basis it has for denying such allegations, particularly in light of the fact that you have already confirmed that:

> (1)   As of the filing of Plaintiffs' complaint, BSN never tested the BSN products to confirm whether they contained CEM3;

> (2)   As of the date of our meeting on December 7th, BSN still had not tested any of the products to determine whether they actually contained CEM3 (despite at that time, describing Plaintiffs' allegations as "frivolous" and "meritless");

> (3)   To date, BSN still has no test results confirming that the BSN products actually contain any CEM3 (despite waging an Internet blitzkrieg campaign disputing all of the allegations in Plaintiffs' complaint and implicitly reassuring customers that the BSN products contain CEM3);

> (4)   Notwithstanding that BSN products sport "Made In The USA" packaging, the ingredients in the BSN products are actually provided by a supplier in China – a supplier that has not provided BSN with any test results validating that BSN products actually contain CEM3, as BSN advertises.

In light of these facts, coupled with international growing concern that BSN clearly has little grasp or control of what ingredients its China supplier is *actually* putting its in products, please let us know BSN's basis for denying Plaintiffs' allegation that there is no CEM3 in the subject BSN products.

In addition, please let me know whether the Cellmass product that BSN sold in Australia, subject to a recent recall there, is the same as the Cellmass product that BSN sells or has sold in the United States. Among other things, please let me know if the Cellmass product BSN sells or sold in the US contains the same Coumarin noted by the Australian regulatory body. If not, please let me know specifically how the ingredients in the products sold in Australia differ from the products sold in the US.

## B.   Ferguson's Motion To Dismiss For Lack Of Personal Jurisdiction

*Second*, regarding Ferguson's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, Plaintiffs would like to conduct some preliminary discovery regarding the personal jurisdiction issues (i.e., Ferguson's contacts with California, etc.), including a brief deposition of Ferguson. Please let us know whether Defendants are agreeable to promptly providing Plaintiffs the opportunity to undertake such discovery. I am available to take this deposition on January 4, 7-11, or 14-16. Please let me know at your earliest convenience.

C.  **There Is No Apparent "Patent Pending" For CEM3 And BSN Still Has No Evidence That There Is Any Such Substance In Any Of Its Products**

*Third*, your December 19th email suggests that Plaintiffs' allegation that BSN does not have a patent pending for CEM3 is false. However, based on our research and investigation, and confirmed by the documents (incidentally, not the entire file wrapper) that you provided in informal discovery, there is no patent pending for any CEM3 ingredient by BSN. As a preliminary matter, BSN is not even the *applicant* in the application you provided. Aside from that, the documents you provided demonstrate that there were 20 *method* claims pending and all 20 claims were denied – the first ten were denied twice, and none for the actual CEM3 *ingredient/substance*. Furthermore, we were surprised by your statement that "[t]here is nearly a century of literature discussing [CEM3]." Most notably, it defies explanation that BSN could possibly obtain a patent for an ingredient for which there is over 100 years of prior art (i.e., literature). *See* 35 U.S.C. § 101; *see also* MPEP.

It has been our clear understanding from our prior correspondence that neither you nor BSN are aware of any tests confirming whether or not any BSN products actually contain CEM3. Your December 19th email specifically states that Defendants "hope to be able to complete the testing of some initial samples by the end of the month." Obviously we will demand that our experts have the opportunity to test every sample that is ultimately tested by Defendants. Until Defendants actually complete tests of their own products, however, we suggest that you temper any unfounded accusations or allegations involving Rule 11 sanctions. To the extent you or your clients are in possession of any such test results showing that CEM3 exists and is present in the BSN products, please provide such evidence immediately.

D.  **Under C.D. Cal. L.R. 83-1.3.1, It Would Not Be Appropriate To File A Notice Of Related Cases As The Relatedness Requirements Are Not Met And Consolidation Would Not Be Proper Under Fed. R. Civ. P. 42(a)**

*Fourth*, without providing any written explanation of your own as to why Defendants believe the cases are related, you have asked for us to provide Plaintiffs' "position in writing as to why the cases are not related and why a notice should not be filed." Under Central District, Local Rule 83-1.3.1, the filing of a notice of related cases should only be filed where there is another action previously filed or currently pending in the Central District that: (a) "arise[s] from the same or a closely related transaction, happening or event;" or (b) "call for determination of the same or substantially related or similar questions of law and fact;" or (c) "[f]or other reasons would entail substantial duplication of labor if heard by different judges;" or (d) "involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c is present." C.D. Cal. L.R. 83-1.3.1. Furthermore, the notice of related cases must "also include a brief factual statement setting forth the basis for the attorney's belief that the action qualifies for related case transfer." *Id.*

In sum, we cannot in good faith file a notice of related cases because this action and the Bio-Engineered Supplements & Nutrition, Inc. v. Lopez, et al. case do not meet the test for relatedness under Local Rule 83-1.3.1 and are not suitable for consolidation under Federal Rule of Civil Procedure 42(a). As an initial matter, in our December 7 meeting I believe you said that you would substitute in as counsel for BSN in that other matter, and indicated that you were considering simply dismissing that case outright. Thus, I don't think that tenuous and quite different case can serve as a fulcrum for moving this case.

More importantly, I don't believe the cases are "related" pursuant to Fed. R. Civ. P. 42(b) because:

(1)  The two actions do not involve common issues of fact or law - instead they involve different parties, different claims, different facts, different evidence, and different procedural vehicles;

(2)  The handling of both cases by the same judge is not likely to result in a substantial savings of judicial time and effort;

(3)   The earlier case has progressed to a point where designating this action as related and appropriate for consolidation would likely delay the proceedings in both cases substantially;

(4)   The cases are not susceptible to disposition in a single proceeding – substantive and procedural issues in connection with discovery, motion practice, and expert discovery are vastly different in the two cases;

(5)   There is no risk of inconsistent adjudications or judgments; and

(6)   Consolidation would create a substantial risk of prejudice and confusion.

Defendants' agenda appears aimed solely at delaying Plaintiffs' motion for class certification, which will be brought well within the mandatory timeline set forth by Local Rule 23-3. If you believe a notice of related cases should be filed or otherwise feel consolidation under Rule 42(a) is appropriate, please let us know. As it stands, Defendants have not stated any factual or legal reason as to why they believe a notice of related cases should be filed or why consolidation is warranted. To the extent you remain "inclined to believe that such a notice should be filed[,]" please provide us with a factual and/or legal basis for your position in writing.

### E.    Plaintiffs Will Comply With Their Document Retention And Preservation Obligations And Defendants Are Expected To Do The Same

*Fifth*, Plaintiffs and their counsel will comply with their discovery and document preservation and retention obligations. We expect BSN, Mr. Ferguson and Defendants' counsel to do the same. As we emphasized during our initial meeting, we expect you to take all necessary steps to ensure that Defendants comply with their discovery and document preservation obligations, including preserving samples of the products (from 2003 to the present) and all potentially relevant documents, emails, other ESI, handwritten notes, correspondence, voicemail messages, test results, assays, governmental (national and international) warning letters and recalls, etc., including those same materials and documents located in China.

### F.    In Accordance With C.D. Cal. L.R. 23-3, Plaintiffs Intend To Promptly Move For Class Certification

*Sixth* and finally, and continuing with our meet and confer conference on December 7th, this correspondence shall further confirm Plaintiffs' intent to proceed with a motion for class certification in accordance with Local Rule 23-3.

The certification issues are fairly straightforward and generally beyond dispute. As a starting point, the *numerosity* requirement, *see* Fed. R. Civ. P. 23(a)(1), appears to be beyond any legitimate dispute. You admitted during our meeting on December 7th that you believed that the class was likely "50,000 to 100,000" people and given BSN's sales figures, including $160,000,000 in 2007 sales attributable to these products, we believe that the ultimate size of the class may be larger. The Rule 23(a)(2) *commonality* requirement is also easily met. In addition, Plaintiffs' claims are *typical* of the class. *See* Fed. R. Civ. P. 23(a)(3).

Finally, we understand from your December 19th correspondence that Defendants intend to argue that Call, Jensen & Ferrell is inadequate class counsel under Rule 23(a)(4). Aside from actions taken in public fora which we cannot control, Mr. Lopez is not giving private support or encouragement to this lawsuit or our firm. I am not sure how our firm's prior representation of Lopez creates a conflict or is somehow a basis for arguing that our firm is not an adequate class counsel. I am not aware of any authority indicating that merely representing one participant in an industry somehow bars a firm from serving as class counsel. Indeed, I think such a rule would be against public policy because it would categorically preclude a lot of good cases from being brought with no benefit to the public. I understand from your client's barrage of press releases that you are intent on making such an argument, but I would like to know the legal and factual bases for such a position at your

earliest convenience.

In general, to the extent we can informally agree that any of the other Rule 23(a) elements are met, please let me know.

The driving force behind Plaintiffs' class action is a desire to enjoin Defendants' false and misleading advertising (i.e., promising that BSN products contain a revolutionary form of creatine when, in fact, it does not and without even having tested the products to verify the veracity of their own claims). Accordingly, Plaintiffs intend to seek class certification under Rule 23(b)(2) as Defendants have "acted or refused to act on grounds generally applicable to the class." Fed. R. Civ. P. 23(b)(2). If Defendants believe that class certification pursuant to Rule 23(b)(2) is not warranted, please provide us with your thoughts and the basis for your position. Finally, in addition to Rule 23(b)(2), Defendants will seek class certification pursuant Rule 23(b)(3), as both "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). To the extent you disagree, please let us know why. We would greatly appreciate your response at your earliest possible convenience.

If you have any questions, comments, or would like to further discuss any of these items or would like to try to informally resolve this matter, please let us know as we are generally available to discuss anytime.

Regards,

James

**James Hardin**
*Shareholder*
**CALL, JENSEN & FERRELL**
610 NEWPORT CENTER DRIVE, SUITE 700
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE: (949) 717-3000
FACSIMILE: (949) 717-3100
jhardin@calljensen.com
www.calljensen.com

The preceding email message (including any attachments) contains information that may be confidential, protected by the attorney-client or other applicable privileges, or constitutes non-public information. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system. Use, dissemination, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

**James Hardin**
*Shareholder*
**CALL, JENSEN & FERRELL**
610 NEWPORT CENTER DRIVE, SUITE 700
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE: (949) 717-3000
FACSIMILE: (949) 717-3100
jhardin@calljensen.com
www.calljensen.com

The preceding email message (including any attachments) contains information that may be confidential, protected by the attorney-client or other applicable privileges, or constitutes non-public information. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system. Use, dissemination, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

**From:** Phillips Jr., Robert D. [mailto:RPhillips@ReedSmith.com]
**Sent:** Wednesday, December 19, 2007 2:42 PM
**To:** James Hardin
**Cc:** Evans, Thomas A.; Rakesh Amin; Frieden, Jamie L.; sfarrell@calljensen.com
**Subject:** Rivera v. BSN

2/1/2008

James-

We are going ahead with our motion to dismiss Mr. Ferguson and our answer on behalf of BSN. Please review the motion and let us know if you will reconsider your decision not to dismiss Mr. Ferguson.

Also please take a closer look at the patent issue now that you have extensive documentation on that point. Regardless of what you believe to be the significance of the pending application, it is quite clear that the allegations in the complaint are in error on this point.

I would suggest that the allegations that CEM3 does not exist likewise should be dropped. There is nearly a century of literature discussing this substance, and it seems both odd and frivolous for you to be making this particular allegation. Dropping that allegation should not affect in any way your central claim that CEM3 was not present in some or all of the shipments in question.

On the central issue, we hope to be able to complete the testing of some initial samples by the end of the month.

On the "related case issue", we would like your position in writing as to why the cases are not related and why a notice should not be filed. While we are holding off on filing our own notice at this time, we are inclined to believe that such a notice should be filed.

Finally, as I explained in our meeting on December 7, your firm's prior relationship with the defendants in the Lopez matter raises two important and related issues in the class action:

(1) whether your very recent representation of other parties involved in the supplement industry who sought to impair BSN's reputation raises a conflict of interest in connection with your current role as putative class counsel in the consumer class action;

(2) whether your prior clients in the Lopez matter have supported or encouraged in any way the filing and prosecution of the consumer class action.

For this reason, I requested on December 7 and reiterated now my request that your firm preserve all documents and emails reflecting or constituting any communications with your prior clients relating to BSN, its products, any test results, and any payments of fees to your firm by those clients. That preservation should include voicemail messages as well as emails, other ESI, and hard copy documents. While we understand that you may wish to assert privilege objections to the production of such evidence, we believe that it may be relevant to the pending class action and therefore insist that it be retained until the court has had an opportunity to review the issues.

I will in the SF office for the rest of this week and during Thursday and Friday of next week. If we do not speak this week, let's try to connect next week if you are around.

-Bo

Robert D. Phillips, Jr.
(415) 659-5965  (San Francisco)
(213) 457-8311  (Los Angeles)
rphillips@reedsmith.com
www.reedsmith.com

**Reed Smith**LLP

Two Embarcadero Center
Suite 2000
San Francisco, California 94111
(415)  543-8700
(415)  391-8269 (fax)

2/1/2008

355 South Grand Avenue
Suite 2900
Los Angeles, California 90071
(213) 457-8000
(213) 457-8080 (fax)

\* \* \*

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

\* \* \*

To ensure compliance with Treasury Department regulations, we inform you that, unless otherwise indicated in writing, any U.S. Federal tax advice contained in this communication  (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or applicable state and local provisions or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

Disclaimer Version RS.US.1.01.03
pdc1

Page 1 of 1

BSN Online - Cellmass

11/6/2007



**SUPPLEMENT FACTS**

Serving Size: 1 scoop (16g)‡
Servings Per Container: 40

| | Amount Per Serving | % Daily Value |
|---|---|---|
| Calories | 40 | |
| Total Carbohydrates | 10g | 3% |
| Sugars | 0g | ** |
| Calcium | 80mg | 8% |
| Phosphorous | 150mg | 15% |
| Sodium | 70mg | 3% |
| Potassium | 140mg | 4% |
| CEM3™(Creatine Ethyl Ester Malate) Patent Pending | 3000mg | ** |
| Glutamine AKG | 2000mg | ** |
| Muscle Cell Uptake Proprietary Matrix | | |
| Cinnulin-PF®(Aqueous Cinnamon Extract) | 950mg | ** |
| Di-Calcium Phosphate | | |

Supplement Facts | Product Analysis | FAQ | Product Testimonials | More info

SIGN IN    ITEMS: 0
FREE NEWSLETTER SIGNUP

DOWNLOAD ▸▸
FALL 2007 CATALOG

PRODUCT LINE
Select One

PRODUCT CATEGORY
Select One

PRODUCTS | PROGRAMS | BSN LOCATOR | TEAM BSN | GIRLS OF BSN | BSN VISION | APPAREL | PLANNED PERFORMANCE | CONTACT

1-877-431-9524
EMAIL THIS PAGE TO A FRIEND

FINISH FIRST.™

**BSN PRODUCTS**

Learn More ›

HOME - AWARDS - MISSION - BLOGS - NEWS - EVENTS - EMPLOYMENT - TRADEMARK USE POLICY - PRIVACY POLICY - RETURN POLICY - MYSTERY COUPON

Conditions of Use ©2007 BSN Inc

http://www.bsnonline.net/products/products_expanded.php?id=83426002153

**Exhibit 3**

BSN Online - Cellmass

Page 1 of 1

EMAIL THIS PAGE TO A FRIEND ■

PRODUCTS | PROGRAMS | BSN LOCATOR | TEAM BSN | GIRLS OF BSN | BSN VISION | APPAREL | PLANNED PERFORMANCE | CONTACT |



FRESH FIRST.

**DOWNLOAD ▸**
FALL 2007 CATALOG ■



**BSN PRODUCTS**

Learn More ›

PRODUCT LINE:
[ Select One ]

PRODUCT CATEGORY
[ Select One ]

Supplement Facts | Product Analysis | FAQ | Product Testimonials | More info

**Cellmass Highlights:**

■ Use Post-Training & Nighttime to accelerate recovery, mass and performance: Users report "The CELLMASS™ you take today is the CELLMASS™ you feel tomorrow!"

■ Rapidly re-loads muscle cells with creatine, phosphocreatine, glutamine, phosphates, electroytes and water

■ Contains Cinnulin-PF®: For greater muscle insulin sensitivity. Found to reduce body fat in obese subjects.

■ Contains BSN's exclusive patent-pending CEM3™ (creatine ethyl ester malate): The "no bloat, no load, no cycle" creatine

‹ Back

**Product Specs:**

**Function:** Post-Training/Nighttime Mass & Recovery Activator
**Size/Count:** 1.41 lbs
**Form:** Powder
**Minimal Cycle Length:** 6 weeks
**Optimal Cycle Length:** 12 weeks
**Suggested Cycle Off Length:** 4 weeks

Planned Performance Pricing!

**Price: $59.99**

Qty: [ 1 ]  [ Grape Cooler ]

[ BUY NOW ]  [ EMAIL IT ]

HOME - AWARDS - MISSION - BLOGS - NEWS - EVENTS - EMPLOYMENT - TRADEMARK USE POLICY - PRIVACY POLICY - RETURN POLICY - MYSTERY COUPON

Conditions of Use ©2007 BSN Inc

http://www.bsnonline.net/products/products_expanded.php?id=83426002153

11/6/2007



FINISH FIRST.

1-877-431-9574

EMAIL THIS PAGE TO A FRIEND ▶

SIGN IN          ITEMS: 0
FREE NEWSLETTER SIGNUP ▶

**PRODUCTS** ▌ **PROGRAMS** ▌ **BSN LOCATOR** ▌ **TEAM BSN** ▌ **GIRLS OF BSN** ▌ **BSN VISION** ▌ **APPAREL** ▌ **PLANNED PERFORMANCE** ▌ **CONTACT**



BSN PRODUCTS

PRODUCT LINE:  Select One
PRODUCT CATEGORY:  Select One

DOWNLOAD ▶▶
FALL 2007 CATALOG ▌

Supplement Facts │ Product Analysis │ FAQ │ Product Testimonials │ More Info

**N.O.-Xplode Highlights:**

- Training Energy, Motivation and Intensity
- Mental Alertness and Focus
- Muscle Fullness, Vascularity and Pumps
- Strength, Power, Endurance and Work Capacity
- Resistance to Muscle Fatigue
- Blood Flow and Delivery of Oxygen and Nutrients to Muscle Tissue
- Healthy Nitric Oxide (N.O.) Levels
- Now with patent-pending CEM3

< Back

**Product Specs:**

**Function:** Pre-Training Igniter
**Size/Count:** 1.81 lbs.
**Form:** Powder
**Minimal Cycle Length:** 6 weeks
**Optimal Cycle Length:** 12 weeks
**Suggested Cycle Off Length:** 4 weeks

Planned Performance Pricing!

**Price:** $63.99

Qty: [1]   Grape

BUY NOW     TRIAL KIT

Learn More ▶

HOME · AWARDS · MISSION · BLOGS · NEWS · EVENTS · EMPLOYMENT · TRADEMARK USE POLICY · PRIVACY POLICY · RETURN POLICY · MYSTERY COUPON

Conditions of Use ©2007 BSN Inc



1-877-431-8574
EMAIL THIS PAGE TO A FRIEND ▶

SIGN IN          ITEMS: 0
FREE NEWSLETTER SIGNUP ▶

**PRODUCTS** | **PROGRAMS** | **BSN LOCATOR** | **TEAM BSN** | **GIRLS OF BSN** | **BSN VISION** | **APPAREL** | **PLANNED PERFORMANCE** | **CONTACT**

PRODUCT LINE: [Select One]    PRODUCT CATEGORY: [Select One]    DOWNLOAD ▶▶ FALL 2007 CATALOG

Supplement Facts | Product Analysis | FAQ | Product Testimonials | More Info

**Nitrix Highlights:**

- Volumizes muscle tissue for all-day vascularity, pumps, tone, hardness
- Promotes tissue recovery, repair, and endurance
- Reduces muscle/joint pain and stiffness
- Supports maximal Nitric Oxide (NO) levels
- Contains patent-pending CEM3™
- Used by models, bodybuilders to bring out shape and vascularity before photo shoots
- ONLY $0.278 per tablet!
- SAVE $21.99 (vs. 2 bottles of 180-count NITRIX™)

< Back

**Product Specs:**

**Function:** Vaso-Muscular Volumizer
**Size/Count:** 360 count
**Form:** Tablet
**Minimal Cycle Length:** 6 weeks
**Optimal Cycle Length:** 12 weeks
**Suggested Cycle Off Length:** 4 weeks

Planned Performance Pricing!

**Price:** $89.99

**Qty:** [1]    [360 count]

[BUY NOW]

HOME - AWARDS - MISSION - BLOGS - NEWS - EVENTS - EMPLOYMENT - TRADEMARK USE POLICY - PRIVACY POLICY - RETURN POLICY - MYSTERY COUPON
Conditions of Use ©2007 BSN Inc

BSN Online - N.O.-Xplode



SIGN IN          ITEMS: 4

EMAIL THIS PAGE TO A FRIEND ■

**PRODUCTS** | **BLOGS** | **BSN LOCATOR** | **TEAM BSN** | **GIRLS OF BSN** | **BSN VISION** | **APPAREL** | **PLANNED PERFORMANCE** | **CONTACT**

DOWNLOAD ▸
FALL 2007 CATALOG

**BSN PRODUCTS**

CLOSE

PRODUCT LINE:
Select One

PRODUCT CATEGORY:
Select One

FAQ | Testimonials | Recommended Use

**N.O.-Xplode Highlights:**

- Training Energy, Motivation and Intensity
- Mental Alertness and Focus
- Muscle Fullness, Vascularity and Pumps
- Strength, Power, Endurance and Work Capacity
- Resistance to Muscle Fatigue
- Blood Flow and Delivery of Oxygen and Nutrients to Muscle Tissue
- Healthy Nitric Oxide (N.O.) Levels

< Back

**Product Specs:**

**Function:** Pre-Training Igniter
**Size/Count:** 1.81 lbs.
**Form:** Powder
**Minimal Cycle Length:** 6 weeks
**Optimal Cycle Length:** 12 weeks
**Suggested Cycle Off Length:** 4 weeks

Planned Performance Pricing!

**Price: $63.99**

Qty: [ 1 ]   [ Grape ]

BUY NOW

Learn More ›

FRESH FIRST.

**Exhibit 4**

BSN Online - Cellmass

Page 1 of 1



EMAIL THIS PAGE TO A FRIEND ▮

PRODUCTS ▮ BLOGS ▮ BSN LOCATOR ▮ TEAM BSN ▮ GIRLS OF BSN ▮ BSN VISION ▮ APPAREL ▮ PLANNED PERFORMANCE ▮ CONTACT

SIGN IN    ITEMS: 4

CLOSE

**BSN PRODUCTS**

PRODUCT LINE
Select One

PRODUCT CATEGORY
Select One

FAQ ▮ Testimonials ▮ Recommended Use

**Cellmass Highlights:**

- Use Post-Training & Nighttime to accelerate recovery, mass and performance: Users report "The CELLMASS™ you take today is the CELLMASS™ you feel tomorrow!"

- Rapidly re-loads muscle cells with creatine, phosphocreatine, glutamine, phosphates, electroytes and water

- Contains Cinnulin-PF®: For greater muscle insulin sensitivity. Found to reduce body fat in obese subjects.

< Back

DOWNLOAD >
FALL 2007 CATALOG

**Product Specs:**

**Function:** Post-Training/Nighttime Mass & Recovery Activator
**Size/Count:** 1.41 lbs
**Form:** Powder
**Minimal Cycle Length:** 6 weeks
**Optimal Cycle Length:** 12 weeks
**Suggested Cycle Off Length:** 4 weeks

Planned Performance Pricing!

**Price: $59.99**

Qty: [1]    Grape Cooler

BUY NOW    TRIAL KIT

HOME - AWARDS - MISSION - ARTICLES - NEWS - EVENTS - EMPLOYMENT - TRADEMARK USE POLICY - PRIVACY POLICY - RETURN POLICY - MYSTERY COUPON
Conditions of Use ©2008 BSN Inc



SIGN IN    ITEMS: 4

EMAIL THIS PAGE TO A FRIEND ■

■ PRODUCTS ■ BLOGS ■ BSN LOCATOR ■ TEAM BSN ■ GIRLS OF BSN ■ BSN VISION ■ APPAREL ■ PLANNED PERFORMANCE ■ CONTACT ■

DOWNLOAD ▶ FALL 2007 CATALOG

**BSN PRODUCTS**

Learn More >

PRODUCT LINE
Select One

PRODUCT CATEGORY
Select One

FAQ | Testimonials | Recommended Use

**Nitrix Highlights:**

- Volumizes muscle tissue for all-day vascularity, pumps, tone, hardness
- Promotes tissue recovery, repair, and endurance
- Reduces muscle/joint pain and stiffness
- Supports maximal Nitric Oxide (NO) levels
- Used by models, bodybuilders to bring out shape and vascularity before photo shoots
- ONLY $0.278 per tablet!
- SAVE $21.99 (vs. 2 bottles of 180-count NITRIX™)

< Back

**Product Specs:**

**Function:** Vaso-Muscular Volumizer
**Size/Count:** 360 count
**Form:** Tablet
**Minimal Cycle Length:** 6 weeks
**Optimal Cycle Length:** 12 weeks
**Suggested Cycle Off Length:** 4 weeks

Planned Performance Pricing!

**Price: $89.99**

Qty: [1]    [360 count]

BUY NOW

HOME - AWARDS - MISSION - ARTICLES - NEWS - EVENTS - EMPLOYMENT - TRADEMARK USE POLICY - PRIVACY POLICY - RETURN POLICY - MYSTERY COUPON

Conditions of Use ©2008 BSN Inc