GARY A. WALDRON, Bar No. 99192
JAMES B. HARDIN, Bar No. 205071
WALDRON & OLSON, LLP
26 Corporate Plaza Drive, Suite 100
Newport Beach, CA 92660
Tel: (949) 760-0204
Fax: (949) 760-2507
gwaldron@waldronolson.com
jhardin@waldronolson.com

*Additional counsel on following page*

Attorneys for Plaintiffs and the proposed class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RIVERA and DAN ABELL, individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BIO-ENGINEERED SUPPLEMENTS & NUTRITION, INC., d/b/a BSN, INC., a Florida Corporation, CHRISTOPHER FERGUSON, an individual, and DOES 1 through 250, inclusive;<br><br>Defendants. | Case No.  SACV07-1306 JVS (RNBx)<br><br>**OPPOSITION BY PLAINTIFFS TO DEFENDANTS' REQUEST FOR MONETARY SANCTIONS**<br><br>**[Magistrate Judge Block]**<br><br>[*Under Submission*]<br><br>Complaint Filed:   November 6, 2007<br>Discovery Cutoff: February 16, 2009<br>Pretrial Conf.       May 4, 2009<br>Trial Date:           May 19, 2009 |

1  SCOTT J. FERRELL, Bar No. 202091
2  SCOT D. WILSON, Bar No. 223367
   CALL, JENSEN & FERRELL
3  A Professional Corporation
   610 Newport Center Drive, Suite 700
4  Newport Beach, CA 92660
   Tel: (949) 717-3000
5  Fax: (949) 717-3100
   sferrell@calljensen.com
6  swilson@calljensen.com
7
8  MARK P. ROBINSON, Bar No. 54426
   KEVIN F. CALCAGNIE, Bar No. 108994
9  JEOFFREY L. ROBINSON, Bar No. 97852
   ROBINSON, CALCAGNIE & ROBINSON INC.
10 620 Newport Center Drive, 7th Floor
11 Newport Beach, CA 92660
   Tel: (949) 720-1288
12 Fax: (949) 720-1292
   mrobinson@rcrlaw.net
13 kcalcagnie@rcrlaw.net
14 jrobinson@rcrlaw.net

15 Attorneys for Plaintiffs and the proposed class

16
17
18
19
20
21
22
23
24
25
26
27
28

CALL, JENSEN &
FERRELL
A PROFESSIONAL
CORPORATION

RIV03-01:395539_2.DOC: 7.31.2008                        - i -
OPPOSITION BY PLAINTIFFS TO DEFENDANTS' REQUEST FOR MONETARY SANCTIONS

## I. INTRODUCTION

Plaintiffs' Counsel ("Counsel") opposed BSN's motions to compel based on reasonable interpretations of: (1) their duties under *Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal.4th 360 (2007) to protect the contact information of absent California class members; and (2) applicable law holding that BSN needed to meet a "heavy burden" to prove depositions of absent class members were necessary here given the parties were already conducting interviews, surveys, and obtaining declarations. *See, e.g.*, *In re Worlds of Wonder Sec. Litig.*, 1992 WL 330411, at *2 (N.D. Cal. 1992) ("Absent a strong showing of necessity, discovery of absent class members will generally be denied.").

The Court's July 21, 2008 Order ("Order") is premised on the view that if a party submits a witness declaration they essentially concede that person should properly submit to deposition. In the context of class action litigation, however, Counsel believed (perhaps without expressing it clearly enough) that premise does not apply and any dispute over reliance should be addressed with competing declarations, surveys, and interviews of class members. Depositions of absent class members involve much greater burden on absent class members than any other form of discovery. Thus, it seemed consistent with controlling precedent to oppose disclosure of private information and depositions of putative class members while submitting declarations of putative class members to Judge Selna.

## II. SANCTIONS ARE NOT APPROPRIATE BECAUSE COUNSEL'S POSITIONS WERE REASONABLE, IN GOOD FAITH, AND CONSISTENT WITH THE APPLICABLE LEGAL STANDARDS

### A. Counsels' Attempt To Protect The Privacy Rights Of Absent Class Members Was Substantially Justified Based On *Pioneer Electronics (USA), Inc.* And Their Duties As Putative Class Counsel

After disclosing the names of the putative class members known by Plaintiffs in response to interrogatories, Counsel belatedly concluded that *Pioneer* required them to assert the privacy rights of the putative class members. Although the Court ultimately concluded otherwise, Counsel's position was substantially justified based on *Pioneer*;

1 any error resulted from the effort to protect the interests of absent class members.

2     As this Court noted, Counsel correctly argued: (1) this dispute involved the potential discovery of contact information of absent class members (rather than their discussions with Plaintiffs); and (2) the *Pioneer* framework for protecting the privacy rights of putative class members does apply here. *See* Order, at p. 2 (noting that "the analytical framework for assessing claims of invasion of privacy under the California Constitution applied in *Pioneer* . . . still applies here. . . ."). Although the Court ultimately found that *Pioneer* did not require the putative class members to receive notice and a chance to opt-out, Counsel's position was based on a reasonable interpretation of *Pioneer*. *See*, *e.g.*, Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. P. Before Trial (The Rutter Group 2008), ¶ 10:742.1 ("To protect their privacy, the potential class members are given the right to object in advance to disclosure of their contact information.").

    The question in *Pioneer* was whether giving class members notice and a chance to opt-out of being contacted was *enough protection* of the privacy rights of putative class members in their contact information. In *Pioneer*, the California Supreme Court considered two alternatives – both of which afforded the absent class members notice. The only question was whether it was enough protection of their privacy interest to let them opt-in or opt-out of being contacted by class counsel. Ultimately, *Pioneer* held that giving absent class member notice and a chance to opt out was sufficient to protect their privacy rights. *See id*. at 375. In *Pioneer* the absent class members were all "complaining customers," i.e., those who had "voluntarily disclosed their identifying information to that company in the hope of obtaining some form of relief," which the *Pioneer* Court specifically found caused them to have a "reduced expectation of privacy" and lessened the seriousness of the invasion of privacy. *Id*.

    The *Pioneer* Court reasoned that the complaining customers: (1) had "voluntarily disclosed their identifying information to that company in the hope of obtaining some form of relief"; and (2) "might reasonably expect, and even hope, that their names and

addresses would be given to any such class action plaintiff." *Id.* By contrast, the putative class members here never complained or affirmatively reached out to any of the parties in the case.

In addition, Counsel reasonably relied on *Pioneer* because it has not been narrowed by any class action opinions and *Puerto v. Superior Court*, 158 Cal.App.4th 1242 (2008), which the Court discusses in detail, actually distinguishes *Pioneer* because it was a class action. This Court's nuanced application of *Puerto* is well reasoned and pivots on Counsel's prior disclosure of the names of the putative class members in discovery. However, Counsel was also reasonable in focusing on the other "salient distinction" noted by *Puerto* – the fact that *Pioneer* was a class action involving a request for the contact information of putative class members while *Puerto* was an individual action involving only a request for contact information of "percipient witnesses." 158 Cal.App.4th at 1251. *Puerto* seized on this "salient distinction" that *Pioneer* was a class action involving "precertification discovery designed to identify members of the class rather than to locate percipient witnesses." *Id.* It is notable that BSN never cited *Puerto* in its Joint Stipulation or Memorandum of Law.

Finally, the privacy issue in this case was the degree of privacy protection due the contact information of absent class members, not providing the location of percipient witnesses as in *Puerto*. *See* Order, at p. 3 ("the privacy issue in dispute here is whether the already-identified putative class members to whom plaintiffs were referring in their declarations have a privacy interest in their contact information that warrants protection from disclosure."). Thus, under *Puerto*, this was arguably not a basic civil discovery dispute regarding the location of percipient witnesses. Accordingly, Counsel's position should not be characterized as lacking justification.

**B. Counsel's Effort To Protect Unnamed Class Members From Being Deposed Was Substantially Justified**

In the Joint Stipulation, Counsel opposed BSN's demand to depose a sampling of these absent class members on the grounds that: (1) BSN should not target for

deposition only putative class members known by Plaintiffs (*see* Joint Stip 6:4-6 ("the only unnamed class members BSN is interested in disturbing and burdening with depositions are those with relationships to Plaintiffs"); and (2) BSN could not meet the exacting legal standard for showing that any depositions of any putative class members are warranted. In its Order, the Court noted it "was inclined to concur with plaintiffs that defendants had not made a sufficient showing that, for purposes of opposing the class certification motion, they needed to conduct depositions of a sampling of the [putative class members] . . ." Order, at p. 4.

On the first point, Counsel did not take the position that the putative class members possessed ***no relevant information***,[1] but instead (tried to) argue that "information possessed by unnamed class members known by Plaintiff is ***not more 'relevant'*** than information possessed by other unnamed class members" (Joint Stip., at 9:22-24) (emphasis added). Obviously, all putative class members possess relevant information and Counsel would have never intentionally argued otherwise. The issue before the Court was whether a handful of putative class members (those personally known by Plaintiffs) should be deposed. To emphasize the unfairness of BSN's targeting Plaintiffs' friends for depositions, Counsel argued: (1) the information they possessed was no more relevant than any other absent class members; and (2) even if several class members were deposed and testified that they did not rely on the CEM3, such "anecdotal evidence" would not be probative enough to justify the burden imposed on the putative class members. (*See* Joint Stip, pp 32-34 (citing *Cornn v. United Parcel Serv., Inc.*, 2006 WL 2642540 (N.D. Cal. Sept 14, 2006) (noting that "the discovery of anecdotal evidence bearing on issues common to the class is not in itself an adequate

---

[1] In their Supplemental Notice, BSN argued incorrectly that Counsel had argued that the putative class members known by Plaintiffs did not possess any relevant information. (BSN's Supplemental Notice, 1:14-16 "Plaintiffs had these declarations in hand when they argued in the joint stipulation that these witnesses and putative class members did not have relevant information," 2:2-6; "Plaintiffs' claim that these witnesses have no useful information regarding reliance and causation . . .After arguing to the Court that these individuals do not have discoverable information . . . .").

1  justification for ordering depositions of absent class members"); *Blackie v. Barrack*, 524 F.2d 891, 906 (9th Cir. 1975) (explaining that "[t]he fact that a defendant may be able to defeat the showing of causation as to a few individuals does not transform the common question into a multitude of individual ones").

Regarding the second point, Counsel argued that Defendants could not satisfy the demanding test to obtain precertification depositions of putative class members. (Joint Stip., at pp. 28-38). Counsel cited authority noting that the burden for seeking the depositions of absent class members is "particularly heavy." The thrust of Counsels' argument was that any depositions were unnecessary because the parties could, and clearly were, conducting interviews, surveys, and obtaining declarations. *See In re Worlds of Wonder Sec. Litig.*, 1992 WL 330411, at *2 (N.D. Cal. 1992) ("Absent a strong showing of necessity, discovery of absent class members will generally be denied."). Counsel did not think there was anything contradictory or unfair in submitting *declarations* from absent class members while arguing that *depositions* were unnecessary. Counsel believes, and argued in the Joint Stipulation, that depositions are a much greater intrusion on the lives of absent class members and that the dispute over reliance could be addressed with competing declarations, surveys, and interviews.

### III.  BSN'S REQUEST FOR MONETARY SANCTIONS IS UNREASONABLE

Finally, BSN's request for monetary sanctions of more than $23,000 is unreasonable. Counsel apologizes if the Court feels that it has engaged in "gamesmanship," but assures the Court that it has not intended to do so. Counsel has acted in good faith in effort to zealously represent Plaintiffs and protect the putative class. Thus, the Court should decline to impose monetary sanctions under the circumstances. If imposed, the amount should be reasonable and less than $5,000.

Dated:  July 31, 2008                         WALDRON & OLSON LLP

By:s/James B. Hardin
JAMES B. HARDIN
Attorneys for Plaintiffs and proposed class