hSCOTT J. FERRELL, Bar No. 202091
JAMES B. HARDIN, Bar No. 205071
SCOT D. WILSON, Bar No. 223367
CALL, JENSEN & FERRELL
A Professional Corporation
610 Newport Center Drive, Suite 700
Newport Beach, CA 92660
Tel: (949) 717-3000; Fax: (949) 717-3100
sferrell@calljensen.com
jhardin@calljensen.com

MARK P. ROBINSON, Bar No. 54426
KEVIN F. CALCAGNIE, Bar No. 108994
JEOFFREY L. ROBINSON, Bar No. 97852
ROBINSON, CALCAGNIE & ROBINSON INC.
620 Newport Center Drive, 7th Floor
Newport Beach, CA 92660
Tel: (949) 720-1288
Fax: (949) 720-1292
mrobinson@rcrlaw.net
kcalcagnie@rcrlaw.net
jrobinson@rcrlaw.net

Attorneys for Plaintiffs and the Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RIVERA and DAN ABELL, individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BIO-ENGINEERED SUPPLEMENTS & NUTRITION, INC., d/b/a BSN, INC., a Florida Corporation, CHRISTOPHER FERGUSON, an individual, and DOES 1 through 10, inclusive;<br><br>Defendants. | Case No. SACV07-1306 JVS (RNBx)<br><br>**PLAINTIFFS' SUPPLEMENTAL STATEMENT REGARDING REQUEST FOR ATTORNEYS' FEES**<br><br>Date: November 6, 2009<br>Time: 9:00 a.m.<br>Courtroom: 10C<br>Judge: Hon. James V. Selna |

CALL, JENSEN & FERRELL
A PROFESSIONAL CORPORATION

RIV03-01:571797_2.DOC: 11.5.2009   - 1 -   SACV07-1306 JVS (RNBx)
PLAINTIFFS' SUPPLEMENTAL STATEMENT REGARDING REQUEST FOR ATTORNEYS' FEES

1   Plaintiffs respectfully submit this supplemental statement in connection with this
2   Court's tentative order ("Tentative Order") on Plaintiffs' Motion for Final Approval of
3   Class Action Settlement and for Attorneys' Fees, Expenses and an Incentive Award.
4   Specifically, Plaintiffs address concerns raised by various Attorneys General and
5   objector Clayton Starnes (the "Objectors") regarding Class Counsel's request for
6   attorneys' fees.

## I. THE MOTION FOR ATTORNEYS' FEES AND REQUEST FOR A REASONABLE MULTIPLIER SHOULD BE GRANTED

### A. The Concerns Regarding Class Counsel's Fees Appear To Be Improperly Based Solely On The Delta Between Perceived Value To The Class And The Amount Of Fees

In its Tentative Order, this Court correctly notes that "the Attorneys General's and Starnes's primary objection to the Settlement overall is the amount of attorneys' fees requested by Class Counsel" which "[t]hey argue . . . are not commensurate with the value obtained by the class in the Settlement." Tentative Order, at p. 23. It appears that the Objectors deemed the total value of the settlement as significantly lower than the total amount of attorneys' fees requested, and thus objected to the fee request out of hand. However, this argument is misplaced.

#### 1. The Supreme Court Has Rejected The Proposed Proportionality Rule

Even if the total value of the settlement were disproportionately lower than the total amount of attorneys' fees requested (which is not the case), rejecting a reasonable multiplier solely on that basis is improper. "[T]he Supreme Court has made clear that there is no per se 'proportionality' rule between the damages award to a successful plaintiff and the amount of attorneys' fees available, and [courts] have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation." *Cho v. Koam Med.*

CALL, JENSEN & FERRELL
A PROFESSIONAL CORPORATION

RIV03-01:571797_2.DOC: 11.5.2009                - 1 -                SACV07-1306 JVS (RNBx)
PLAINTIFFS' SUPPLEMENTAL STATEMENT REGARDING REQUEST FOR ATTORNEYS' FEES

*Servs. P.C.*, 524 F.Supp.2d 202, 211 (E.D.N.Y. 2007) (citing *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986)); accord *Bellows v. NCO Financial Systems, Inc.*, 2009 WL 35468, *7 (S.D. Cal. Jan. 5, 2009) (citing *City of Riverside*, 477 U.S. at 581 ("The Supreme Court has rejected the argument that the fees [of Class Counsel] must be proportional with the damages recovered.").

Thus, it would be unfair and improper to refuse to apply a reasonable multiplier and award the attorneys' fees requested by Class Counsel in this case simply because the amount of such fees may not be commensurate with the value received by the class in the settlement.

### 2. To Refuse To Apply A Reasonable Multiplier Would Simply Reward Aggressive Defense Litigation Tactics And Ignore Class Counsel's Efforts Throughout This Litigation

The Objectors' reasoning and efforts to convince this Court that no multiplier is warranted would also operate to merely reward Defendants' aggressive litigation tactics. To illustrate (*by way of an admittedly exaggerated example*) the flaw in the Objectors' analysis: in a settlement where class damages totaled $50,000, but aggressive and unyielding defense counsel forced class counsel to incur $1,000,000 in attorneys' fees and costs before finally agreeing to settle for a $50,000 fund (thus making class members whole), a neutral or negative lodestar multiplier would be unjust and result in an improper and unfair discounting of class counsel's fees. This is especially true where, in addition to financial value to the class, Class Counsel obtained valuable injunctive relief and by all accounts, performed skillfully. Class Counsel should not be punished because Defendants' chose to incur over $6,000,000 defending this lawsuit for nearly two years of constant and hard-fought litigation rather than consider settlement at an earlier stage.

Yet, such a flawed analysis appears to be the gravamen of the Objectors' argument that Class Counsel should not be entitled to a reasonable multiplier in this case. As an initial matter, no mention is made by the Objectors of the fact that Class

CALL, JENSEN & FERRELL
A PROFESSIONAL CORPORATION

RIV03-01:571797_2.DOC: 11.5.2009 — -2- — SACV07-1306 JVS (RNBx)
PLAINTIFFS' SUPPLEMENTAL STATEMENT REGARDING REQUEST FOR ATTORNEYS' FEES

Counsel made early efforts to discuss settlement of this action on reasonable terms, including in a December 2007 meeting with defense counsel and an August 2009 letter proposing mediation, which were largely ignored by Defendants until January 2009. When Defendants finally indicated a willingness to enter into settlement discussions, Class Counsel acted promptly and reasonably in reaching a good-faith settlement.

B.  **The Objectors Ignore The Actual Damages And Other Considerations**

More tellingly, the Objectors fail to include any analysis or discussion as to the *actual* damages suffered by the class members as a result of the alleged conduct of BSN. This failure demonstrates that the Objectors could not have assessed whether the relief under the settlement approximates what class members could have expected if they were to prevail at trial. Indeed, at deposition, Starnes testified that he had no idea as to what he or any other class member could, should, or would achieve at trial or at any other relevant juncture in this litigation:[1]

```
Q    Okay. Do you know anything about the finances of BSN?
A    I don't.
Q    You're not aware whether they have loads of money or whether they
     are on the verge of bankruptcy?
A    I have no idea.
Q    Okay. Do you know what the cost is of the Creatine that they put in
     N.O.-Xplode or Cell Mass? Do you know what they paid for that?
A    I don't.
Q    Do you know the cost of -- the cost to manufacture and produce
     N.O.-Xplode or Cell Mass?
A    I don't.
Q    So what -- with respect to your objections, you say you don't -- you
     don't want the settlement to go forward; is that right?
A    That's right. I'm asking that the Judge disapprove it.
Q    Okay. And what are you seeking? What do you want the Judge to
     do. What -- what are you looking for in terms of changes? You just
     don't want the settlement to go forward?
A    That's right. That's all I'm asking --
```

---

[1] Starnes was not able to articulate any issues he had with the settlement without referring to the objections prepared for him by his attorneys. Exh. A to Orr Decl. (Starnes Depo., at 36:22-37:6). This is not surprising as Starnes admitted that he never read the settlement agreement nor any other document in the litigation, (*id.* at 41:24-43:9), and decided to object only after meeting with his boss, attorney Jeff Weinstein, who has been referred to by some as a professional objector. (*Id.* at 31:1-12).

CALL, JENSEN & FERRELL
A PROFESSIONAL CORPORATION

RIV03-01:571797_2.DOC: 11.5.2009    - 3 -    SACV07-1306 JVS (RNBx)
PLAINTIFFS' SUPPLEMENTAL STATEMENT REGARDING REQUEST FOR ATTORNEYS' FEES

```
 1   Q    Okay.
     A    -- is that he disapprove it.
 2   Q    Okay. Is there something that you believe he should approve?
     A    I don't really have an opinion of that.
 3   Q    Okay. What are you seeking? What would make you whole?
 4   A    If the Judge would disapprove the settlement.
```

Exh. A to Orr Decl. (Starnes Depo., at 32:10-33:12).

The stark reality, as discovered by Class Counsel in connection with a detailed review and analysis of hundreds of thousands of documents produced late in this litigation, is that BSN generated just $2.77 million in *actual* nationwide profits from the sale of Cellmass during the class period. The total *gross* nationwide profits for all three of the products was $17.45 million. Further, Cellmass was the only true "creatine" product in the litigation. Nitrix and N.O.-Xplode did not contain any representation regarding the amount of CEM3 present in those products. Defendants repeatedly argued that Nitrix and N.O.-Xplode were primarily nitric-oxide energy igniters – not creatine muscle-builders - with a very small amount of alleged CEM3. Thus, even if Class Counsel successfully established Defendants' liability at trial, there was a substantial risk that the trier of fact could conclude that the total amount of recoverable damages or restitution was not great and should be offset by the benefits of the products non-CEM3 ingredients.

As to the benefits of the products absent CEM3, evidence demonstrated that many class members were satisfied with the products even in the absence of CEM3. Admittedly, there were other ingredients in the products, including Glutamine AKG and Cinnulin PF in Cellmass and L-Arginine AKG and L-Citruline AKG in the Nitrix and N.O.-Xplode products. Additionally, although there was a dispute as to the presence of CEM3 in the products, the products did contain creatine monohydrate in amounts approximating the purported amounts of CEM3. Moreover, as Defendants emphasized, two of the five class members deposed by BSN testified that they were still using the products and had no plans to stop, even after becoming aware of the present litigation. Defs. Surreply in Opp. to Mot. Class Cert., at 6:14-16. Likewise, Starnes testified that

CALL, JENSEN & FERRELL
A PROFESSIONAL CORPORATION

RIV03-01:571797_2.DOC: 11.5.2009   - 4 -   SACV07-1306 JVS (RNBx)
PLAINTIFFS' SUPPLEMENTAL STATEMENT REGARDING REQUEST FOR ATTORNEYS' FEES

he purchased N.O.-Xplode several times, used it for nearly one year, had no complaints with the product, and only stopped using it because he stopped working out. Exh. A to Orr Decl. (Starnes Depo., at 24:1-10). Starnes also purchased Cellmass after using N.O.-Xplode for a significant period of time, which seems to support the fact that he was pleased with N.O.-Xplode and BSN's products generally. (*Id.* at 24:18-25:12).

## II. SEVERAL OTHER FACTORS ARE IMPORTANT TO CONSIDER IN REACHING A REASONABLE FEE AWARD

In tentatively indicating that a multiplier of one should be applied to Class Counsel's lodestar, this Court reasoned, "[t]he value of the settlement counsels a downward departure, but Class Counsel's experience, skill in this matter, and contingent fee status weigh in favor of an upward departure. Therefore, the Court takes the middle road." Tentative Order, at p. 25. However, in taking the "middle road" of arriving at a one multiplier, this Court's assumption must have been that the downward departure and upward departure were equal, and therefore entirely offset one another. Respectfully, Class Counsel posits that the upward departure associated with Class Counsel's experience, skill in this matter, contingent fee status and the delay in receiving their fees far outweigh any slight downward departure due to the perceived value of the settlement such that a positive multiplier is warranted.

### A. This Court May Have Overly Discounted The Risk Involved And Other Factors Justifying A Reasonable Multiplier

Application of a risk multiplier is frequently justified and sometimes required. *Fishel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002) ("It is an abuse of discretion to fail to apply a risk multiplier . . . when (1) attorneys take a case with the expectation that they will receive a risk enhancement, (2) their hourly rate does not reflect that risk, and (3) there is evidence that the case was risky.").

"A multiplier is justified especially if the case is of a type that would not be taken by counsel unless an expectation of a fee enhancement was expected." *Bellows*, 2009

CALL, JENSEN & FERRELL
A PROFESSIONAL CORPORATION

RIV03-01:571797_2.DOC: 11.5.2009         - 5 -         SACV07-1306 JVS (RNBx)
PLAINTIFFS' SUPPLEMENTAL STATEMENT REGARDING REQUEST FOR ATTORNEYS' FEES

WL 35468, at *7. As in *Bellows*, "[h]ere there is no fee shifting statute and no plaintiff would likely pay any attorney's hourly rate" in litigating this case. *Id.* (applying a 1.793 multiplier). *See also Clark v. City of Los Angeles*, 805 F.2d 987, 991-92 (9th Cir. 1986)(confirming multiplier of 1.5); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007); *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002) (1.5 multiplier); *Cornhusker Cas. Ins. Co. v. Kachman*, 2009 WL 2853119, *5 (W.D. Wash. 2009) (refusing to apply 2.0 multiplier, but applying multiplier of 1.5); *Parks v. Eastwood Ins. Servs., Inc.*, 240 Fed. App. 172 (9th Cir. 2007) (affirming 40% enhancement of the lodestar fee). Thus, because this is not the type of case that would likely be taken absent an expectation of a fee enhancement award, a reasonable multiplier is appropriate.

Additionally, "[t]he Court should also consider the delay in obtaining any fee in its award of a multiplier." *Bellows*, 2009 WL 35468, at *8 (citing *Barjon v. Dalton*, 132 F.3d 496, 502-03 (9th Cir. 1997)). For example, in *Bellows*, the court applied a 1.793 multiplier in part because "any payment of fees and costs will likely be paid about seventeen months after the case was filed, a considerable delay that should justify adding to the multiplier here." *Id.* Similarly here, two years of hard-fought and constant litigation merit a reasonable multiplier. This litigation was commenced in November 2007. Class Counsel undertook much deliberation prior to even accepting the present engagement and was well aware of several substantial risks associated with litigating it. As an initial matter, CEM3 was BSN's "flagship" ingredient. It was the backbone of its marketing and, in fact, Cellmass – BSN's creatine vehicle – was named creatine Product of the Year in 2005, 2006, and 2007. Thus, Class Counsel was aware that it would be seen as attacking an industry leader and a "revolutionary" ingredient that consumers and critics alike regarded as effective. There was no doubt from the outset that litigation would be long and hard-fought and that a claim for fees, if any, would not be paid for years.

///

CALL, JENSEN & FERRELL
A PROFESSIONAL CORPORATION

RIV03-01:571797_2.DOC: 11.5.2009   - 6 -   SACV07-1306 JVS (RNBx)
PLAINTIFFS' SUPPLEMENTAL STATEMENT REGARDING REQUEST FOR ATTORNEYS' FEES

1   Class Counsel was also well aware of BSN's reputation for aggressively defending and prosecuting claims relating to its products. In fact, at the time Plaintiffs initiated the present litigation, BSN was already embroiled in bitter litigation against a very small company that had published statements about the quality and efficacy of CEM3. Thus, it came as no surprise to Class Counsel that BSN came out of the gate swinging; threatening Rule 11 sanctions and counterclaims for business defamation. To put it mildly, there were substantial and real business and reputation risks in filing the complaint against BSN, let alone aggressively prosecuting it through resolution.

Additionally, this Court appears to acknowledge that scientific issues in the case were novel. *See* Tentative Order, at p. 25. Indeed, the science behind CEM3, including its "creation," testing, efficacy, and degradation were involved, and Class Counsel was tasked with relying on a team of experts, consultants, and a panoply of tests to determine the presence or absence of CEM3 in the products. Testing for CEM3 did not involve a "litmus" test, but rather required Class Counsel to determine the chemical bonding of creatine ethyl ester and malic acid through various tests, including various forms of analytical testing (i.e., HPLC, GC, GCMS, MS, NMR, IR, and FTIR).

Because the testing protocol for creatine derivatives was novel, it was far from certain (and still contested by BSN) whether CEM3 is chemically feasible, was chemically bonded rather than weakly attached, was in the products when they were shipped, was subject to degradation in sunlight, water, or weak acids, and/or was more or less effective than creatine monohydrate. To this day, there are real disputes as to what tests or methods are most appropriate to determine the presence or absence of creatine-derivatives and/or whether CEM3 can be created pursuant to pending and/or novel patents. Taken together, a reasonable multiplier in the range of 1.5 is warranted because Class Counsel simply would not have taken the present engagement if it did not have an expectation of a modest multiplier to its lodestar. *See Fischel*, 307 F.3d at 1007; *Clark*, 803 F.2d at 991-92; *Welch*, 480 F.3d at 945-46.

///

### B. The Settlement Provides Value Commensurate With What Class Members Might Expect At Trial

"The Supreme Court has rejected the argument that fees must be proportional with the damages recovered." *Bellows*, 2009 WL 35468, at *7. Of course, even if it were appropriate to consider such an argument, the value of the settlement here approximates what class members might have obtained were they successful at trial. As such, no reduction in fees is warranted.

#### 1. The Primary Objective Of This Ligitation - Injunctive Relief – Has Been Accomplished

When evaluating all aspects of the relief under the settlement, its value approaches – if not exceeds - what class members might have obtained at trial. As has already been established, the primary goal of this litigation was to ensure that class members and the public generally had correct information regarding what they ingest. Contrary to the Objectors' concerns, the injunctive relief component of the settlement achieves that goal. On this point, Class Counsel incorporates herein Docket No. 378, BSN Response to AG Reply (although stale "cookies" advertising CEM3 may exist, CEM3 hasn't been used in BSN products since February 2008 and there is little to no chance that any CEM3-labeled products remain for sale today). BSN has also implemented new testing protocols and developed stringent quality control procedures in response to this lawsuit to ensure that it has greater knowledge and control of the ingredients it uses in its products going forward. *If nothing else were accomplished from this litigation, a modest multiplier would be appropriate for this achievement alone.*

#### 2. The Cash Refund Component Of The Settlement Offers Substantial Relief To The Class

In addition to the injunctive relief, the cash refund component of the settlement allows members of the Class to make claims on a fund of $1,500,000. In light of the fact that BSN's documents demonstrated that total nationwide actual profits derived

CALL, JENSEN & FERRELL
A PROFESSIONAL CORPORATION

RIV03-01:571797_2.DOC: 11.5.2009    - 8 -    SACV07-1306 JVS (RNBx)
PLAINTIFFS' SUPPLEMENTAL STATEMENT REGARDING REQUEST FOR ATTORNEYS' FEES

from Cellmass, the key product in this litigation, amounted to just $2.77 Million, the ability of class members to obtain $15.00 per bottle purchased is certainly just and reasonable. In fact, it is likely *more* per bottle than class members ever would have claim to at trial.

Although the claims rate on the refund portion of the $1,500,000 fund were initially disappointingly very low, it was likely due to the fact that class members had to provide proof of purchase to submit a valid claim. The Parties have now agreed to relax that requirement to allow Class members to declare under penalty of perjury that they purchased an allegedly offending product, which will likely result in a robust utilization of the fund. Additionally, the ability of class members to obtain a $15.00 refund on up to four purchases will also likely result in heavy utilization of the fund.[2]

### 3. The Cash Rebate Component Of The Settlement Is Carefully Designed To Provide Class Members With Substantial Value

This Court's Tentative Order seems to discount the value of the cash rebate component of the settlement. Because discovery in this case allowed a reasonable inference that class members were satisfied with the products at issue and, in fact, would likely continue to purchase them, a rebate component of the settlement was created to generate additional value to class members who might not be able to satisfy the claims requirements by producing proof of purchase or declaring under penalty of perjury that they actually purchased CEM3 versions of Cellmass, N.O.-Xplode, or Nitrix (as opposed to prior or later formulations).

The rebate component of this settlement immediately puts the transferable cash rebate directly in the hands of consumers and class members. The consumer simply

---

[2] In commenting on the $30 individual cap on the refund portion of the settlement, this Court correctly noted that the cap would have translated to two bottles of CEM3 products over the life of the six-year class period. However, it should be noted that although the class period is six years, CEM3 was contained in Cellmass for only about 4 years and in Nitrix and N.O.-Xplode for only two years. Thus, with the new individual cap of $60, class members stand a much better chance of being made whole for every purchase of CEM3 products.

CALL, JENSEN & FERRELL
A PROFESSIONAL CORPORATION

RIV03-01:571797_2.DOC: 11.5.2009    - 9 -    SACV07-1306 JVS (RNBx)
PLAINTIFFS' SUPPLEMENTAL STATEMENT REGARDING REQUEST FOR ATTORNEYS' FEES

mails in the rebate and obtains cash as well as a trial-sized sample of BSN product. Because Class Members were found to have "stacked" products (i.e. purchased Cellmass, N.O.-Xplode, and/or Nitrix together) and/or purchased products on a regular, monthly basis, it is anticipated that class members are likely to collect and send multiple rebates in a single mailing, increasing the likelihood of utilization. Because of the ease of obtaining and stacking the rebates, it is anticipated that this portion of the settlement will be heavily utilized by class members, as well as by consumers at large. Even at a modest utilization rate of 30%, well below what is expected, the value of this component of the settlement alone reaches $7,500,000.

## III. CONCLUSION

This Court has recognized that "[t]his is not a perfect settlement." Class Counsel does not dispute this. However, as this Court has also recognized, the standard of review is not theoretical "perfection," but actual reasonableness, adequacy and fairness. The final settlement, while not perfect, approximates, if it does not actually go beyond, what class members might expect to receive at trial and represents the "best" settlement that could be reached under the circumstances. Accordingly, considering all of the relevant factors and the actual history of this litigation, Class Counsel respectfully submits that a reasonable multiplier in the range of 1.5 is justified here.

Dated: November 5, 2009                CALL, JENSEN & FERRELL
                                       A Professional Corporation


                                       By: /s/ Matthew R. Orr
                                           MATTHEW R. ORR

                                       Attorneys for Plaintiffs and class
                                       E-mail: morr@calljensen.com

CALL, JENSEN & FERRELL
A PROFESSIONAL CORPORATION

RIV03-01:571797_2.DOC: 11.5.2009                - 10 -                SACV07-1306 JVS (RNBx)
PLAINTIFFS' SUPPLEMENTAL STATEMENT REGARDING REQUEST FOR ATTORNEYS' FEES