# EXHIBITS 1-3
## TO
## [*PROPOSED*] JUDGMENT AND ORDER OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND DISMISSING CLAIMS

EXHIBIT 1     PAGE 4
EXHIBIT 2     PAGE 30
EXHIBIT 3     PAGE 64

Case 8:07-cv-01306-JVS-RNB    Document 384    Filed 11/06/2009    Page 1 of 26

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.    SACV 07-1306 JVS (RNBx)                  Date    November 6, 2009

Title    Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al.

Present: The Honorable    James V. Selna

| Terri Steele | Sharon Seffens |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| James Hardin<br>Kevin Calcagnie<br>Scott Wilson | Thomas A. Evans<br>Katherine Winn, for Objector |

Proceedings:    Motions for Final Approval of Class Action Settlement and for Attorneys' Fees, Expenses and an Incentive Award

**Case called. Appearances made. Revised tentative ruling issued. Argument heard.**

Plaintiffs Michael Rivera et al. ("Rivera") move for an order granting final approval of their class action settlement with Defendants Bio-Engineered Supplements & Nutrition, Inc. et al. ("BSN"). Rivera also moves for attorneys' fees, expenses and an incentive award for the class representatives. Rivera's motion is opposed by class member Clayton Starnes ("Starnes").[1] The Attorneys General of Alabama, Alaska, Arkansas, Arizona, Colorado, Connecticut, Illinois, Iowa, Kansas, Mississippi, New Jersey, New Mexico, Nevada, Ohio, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, and Vermont, and the Hawaii Office of Consumer Protection (collectively the "Attorneys General") have jointly filed an amici curiae brief opposing the settlement.[2]

## I.    BACKGROUND

---

[1] Rivera contends, without any basis or evidence, that Starnes lacks standing to object and alleges that he is a "professional objector" seeking to "blackmail" the parties. Rivera's arguments would not be worth mentioning were they not so laughable. Specifically, Rivera suggests that Starnes is unlikely to be a BSN customer because he lectures on ERISA and likes watching football. (Pl's. Resp. to Objections of Clayton Starnes 3.) Are BSN customers above such base pursuits? In any case, Starnes has made clear that he has standing to object here. (Starnes Decl. ¶ 2-4, Ex. A.)

[2] Somewhat curiously, the California Attorney General is not among the amici.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-1306 JVS (RNBx) | Date | November 6, 2009 |

| | |
|---|---|
| Title | Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al. |

BSN develops, manufactures, and sells nutritional supplements. Rivera alleged that BSN sold tens of thousands of bottles of Cellmass, Nitrix, and N.O.-Xplode based on false labels and false advertising. Rivera alleged that BSN proclaimed that its products contain a supposedly new and improved form of creatine called "Creatine Ethyl Ester Malate" or "CEM3." Rivera claimed that not only did the products not contain CEM3, but that CEM3 does not exist and is impossible to manufacture.

On November 13, 2008, this Court certified: (1) a nationwide injunctive relief class for fraud pursuant to FRCP 23(b)(2); (2) a California-wide damages class for fraud pursuant to FRCP 23(b)(3); (3) a California-wide damages/restitution class for unjust enrichment pursuant to FRCP 23(b)(3); and (4) a California-wide damages/restitution class for violation of the UCL pursuant to FRCP 23(b)(3). The Court declined to certify nationwide damage/restitution classes for fraud and unjust enrichment, finding that Rivera had not met the burden of proving manageability given differences in the laws of the fifty states.

On April 8, 2009, the parties signed a Memorandum of Understanding and on June 5, 2009, the parties signed a settlement agreement (the "Settlement"). This Court granted preliminary approval of the Settlement on July 6, 2009.

On October 19, 2009, in its tentative order and at the hearing, the Court expressed some concerns about the terms of the settlement, particularly the low number of claim, but indicated that it would grant final approval if these concerns were addressed. (Docket No. 379.) The parties have since submitted a joint supplement to the original motion for final approval. (Docket No. 382.)

Presently before the Court is Rivera's motion for: (1) final settlement approval; (2) an award of attorneys' fees and expenses; and (3) an incentive award for the class representatives.

## II.    CLASS CERTIFICATION

All class actions in federal court must meet the following four prerequisites for class certification:

(1) the class is so numerous that joinder of all members is

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 07-1306 JVS (RNBx) | Date | November 6, 2009 |

| | |
|---|---|
| Title | Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al. |

impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If these prerequisites are satisfied, an action may be maintained as a class action if common questions of law and fact predominate over questions affecting individual members and a class action is superior to other means to adjudicate the controversy. Fed. R. Civ. P. 23(b)(3).

Certification of a class for the purpose of settlement is similar to certification for purposes of trial, except the Court "need not inquire whether the case, if tried, would present intractable management problems" under Rule 23(b)(3)(D). Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997). However, the settlement context "demand[s] undiluted, even heightened, attention" to "unwarranted or overbroad class definitions." Id. The decision to grant or deny class certification is within the trial court's discretion. Yamamoto v. Omiya, 564 F.2d 1319, 1325 (9th Cir. 1977).

Rivera requests that this Court certify the proposed settlement class, defined as follows:

"Settlement Class" means all persons who purchased CEM3 Products in the United States, its territories, or at any United States military facility or exchange for personal use and not for resale from November 6, 2003 through the date of Preliminary Approval. Excluded from the Settlement Class are all persons who validly opt out of the settlement in a timely manner, counsel of record (and their respective law firms) for the Parties, Defendants and any of their parents, affiliates, subsidiaries, independent service providers and all of their respective employees, officers, and directors; the presiding judge in the Action, and all of his relatives within the third degree of consanguinity; any natural person or entity that entered into a release with Defendants prior to the Effective Date concerning the CEM3 Products; and, any natural person or entity that received any compensation from Defendants to endorse the CEM3 products.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-1306 JVS (RNBx) | Date | November 6, 2009 |

| | |
|---|---|
| Title | Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al. |

(Hardin Decl., Ex. 1 at 3.)

Rivera seeks certification for a nationwide damages class under Rule 23(b)(3), in addition to the classes previously certified in the Court's November 13, 2008 Order.

The Court finds that, for the reasons discussed in its November 13, 2008 Order, Docket No. 180, and noted in the Preliminary Approval Order, Docket No. 361, the requirements of Rule 23(a) are satisfied with respect to the proposed classes. The considerations set forth in the prior orders regarding numerosity, commonality, typicality, and adequacy of representation are equally applicable here.[3]

Next, the Court considers whether the proposed classes satisfy the requirements of Federal Rule of Civil Procedure 23(b)(3). "Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Kamm v. Cal. City Dev. Co., 509 F.2d 205, 211 (9th Cir. 1975) (quoting Fed. R. Civ. P. 23 advisory committee's note). A class action may be certified where common questions of law and fact predominate over questions affecting individual members and where a class action is superior to other means to adjudicate the controversy. Fed. R. Civ. P. 23(b)(3).

In the November 13, 2008 Order, the Court declined to certify nationwide damage/restitution classes for fraud and unjust enrichment because Rivera had not met the burden of proving manageability given differences in the laws of the fifty states. (Docket No. 180.) In certifying a class for the purpose of settlement, however, the Court "need not inquire whether the case, if tried, would present intractable management problems" under Rule 23(b)(3)(D). Amchem Products, Inc., 521 U.S. at 620. With the prior manageability problems eliminated by virtue of the settlement, the Court finds that common questions of law and fact predominate over questions affecting individual members and that the class action is superior to other means to adjudicate the controversy. Without the concern of applying different legal standards, the Court's analysis of predominance and superiority set forth in the section of the November 13,

---

[3] The class representatives are Michael Rivera and Dan Abell, and Class Counsel is Robinson, Calcagnie & Robinson Inc. and Call, Jensen & Ferrell. The Court approves class representatives and counsel.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1306 JVS (RNBx) | Date | November 6, 2009 |
|----------|-------------------------|------|------------------|

| Title | Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al. |
|-------|-------------------------------------------------------------------------------|

2008 Order certifying California classes is applicable. The Court directs the parties to the reasoning in that section of the prior Order. (Docket No. 180.)

Accordingly, the Court finds that certification under Rule 23(b)(3) of the proposed nationwide classes is appropriate.

III.    CLASS SETTLEMENT

Federal Rule of Civil Procedure 23(e) requires the Court to determine whether the proposed settlement is "fundamentally fair, adequate and reasonable." Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982). The settlement as a whole, rather than the component parts, is the proper level of inquiry. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). "The settlement must stand or fall in its entirety," and the Court may not delete, modify, or rewrite particular provisions. Id. "Settlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate, and free from collusion." Id. at 1027.

In assessing a settlement proposal, the Court must consider a number of factors, including: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003); Hanlon, 150 F.3d at 1026. "Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." Officers for Justice, 688 F.2d at 625 (internal quotations omitted).

The private consensual decision of the parties is entitled to deference. Hanlon, 1027 F.3d at 1027. The Court's role "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Officers for Justice, 688 F.2d at 626.

A.    Settlement Terms

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 07-1306 JVS (RNBx) | Date | November 6, 2009 |

| Title | Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al. |
|---|---|

The proposed Settlement includes the following four components: (1) a permanent injunction prohibiting BSN from selling or marketing products claimed to contain CEM3; (2) rebates of $3 to $5 on future sales of the relevant products, and a contingent 25% discount; (3) up to $1,500,000 in refunds to class members; and (4) a charitable donation of $1,000,000 worth of BSN products.

First, the Settlement provides for a permanent injunction prohibiting BSN from selling, marketing, advertising, and/or manufacturing any products claimed to contain CEM3.

Second, the Settlement provides that, within sixty calendar (60) days of the effective final approval, BSN shall: (a) for a period of no less than thirty-six (36) months, (i) affix a $5 mail-in rebate coupon to each bottle of Cellmass sold in the United States; and (ii) affix a $3 mail-in rebate coupon to each bottle of Nitrix sold in the United States; and (b) for a period of not less than twenty-four (24) months, affix a $3 mail-in rebate coupon to each bottle of N.O.-Xplode sold in the United States (collectively, the "Rebates"). With each redeemed coupon submitted, each consumer shall select and receive a free sample pack ($2.15 retail value) of either Cellmass, N.O.-Xplode or, at the discretion of BSN, any other BSN product that it selects. Rebates shall be capped at $50 per customer per year. The Parties estimate based upon historical retail sales of BSN's products, this portion of the Settlement could amount to approximately $23.5 million of value to the Settlement Class if fully utilized. If, by April 30, 2010, total redemption of the rebates does not exceed $2.5 million (including the retail value of all sample packs provided), BSN will offer, for the following 12 months, a 25% discount on all direct retail sales of any BSN product (excluding apparel, liquid beverages, sample packs, and promotional items or programs) to all of their customers. The Parties estimate based on historical retail sales of BSN's products, this portion of the settlement could amount to approximately $18.6 million of value to the Settlement Class if fully utilized.

Third, the Settlement provides that class members who timely submit a valid claim form will be provided a refund check of $15 for each CEM3 Product purchased during the Class Period. Cash refunds will be limited to a maximum of $60 per Authorized Claimant.[4] BSN's obligation to pay cash refunds is limited to the payment of valid

---

[4] The original settlement terms limited claimants to a $30 maximum refund, which the Court found likely contributed to the low number of claims. The parties subsequently agreed to raise this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-1306 JVS (RNBx) | Date | November 6, 2009 |

| | |
|---|---|
| Title | Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al. |

claims received and subject to a maximum of $1,500,000.

Fourth, the Settlement provides that BSN will donate a total of $1,000,000 (retail price) worth of BSN products to charitable causes selected by BSN and approved by Class Counsel over the next five years, with an annual donation obligation of no less than $200,000.00.

B.   Final Approval Factors

At the outset, the Court notes that the parties have reached the Settlement after nearly two years of contentious litigation beginning in November 2007. (Hardin Decl. ¶¶ 3-4.) The parties litigated a class certification motion, conducted extensive discovery, and negotiated the Settlement over the course of almost six months with the help of an experienced mediator. (Id. ¶¶ 5-14.) There is no evidence that the Settlement is the result of fraud or collusion.

The Court considers the merits of the proposed settlement under the Staton/Hanlon factors, along with the objections of Starnes and the Attorneys General.

1.   Strength of the plaintiffs' case

Courts have balanced the strength of the plaintiffs' case against the amount offered in the settlement. Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D.Cal. 2004). However, "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits." Id. (quoting Officers for Justice, 688 F.2d at 625.)

BSN has raised several strong defenses to the merits of the underlying claim that could potentially limit or eliminate any relief for the class. First, BSN has raised substantial questions about the materiality of the alleged misrepresentations. There was apparently no premium for the CEM3 products compared to the pre-CEM3 formulations or competing nutritional supplements in the marketplace. (Mot. Br. 16.) And the products were apparently effective and beneficial due to the presence of other ingredients and Creatine Monohydrate ("first generation" creatine). (Id.)

individual cap to $60.  (Joint Filing re Final Approval ¶ 4.)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1306 JVS (RNBx) | Date | November 6, 2009 |
|---|---|---|---|

| Title | Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al. |
|---|---|

Second, BSN has raised substantial questions of reliance. BSN has expert witnesses prepared to testify that the presence of CEM3 in the products was not a substantial factor in consumers' purchasing decisions. (Def's. Resp. to Amicus Br. 6.) BSN has witnesses to testify that consumers made purchasing decisions based on results rather than the presence of a single ingredient. (Id.) Several of Rivera's own witnesses have admitted that they continued to purchase CEM3 products even after they became aware of this suit. (Id.)

Third, assuming Rivera could prove liability, BSN had raised a substantial question about damages. As noted above, there was apparently no appreciable different in price between the CEM3 and non-CEM3 formulations of the relevant products. In fact, when CEM3 was removed from the products, sales apparently increased. (Id.) Thus, to the extent that Rivera could prove liability, actual recovery might potentially be only a small fraction of the purchase price. (Id.)

The Court does not express any opinions on the merits of the claim or Rivera's ability to prove liability and damages, other than to note that the hurdles Rivera faced were not insubstantial. This is not a "slam-dunk" case, and settlement appears to be a fair resolution for the class considering the burdens Rivera faced. Neither Starnes nor the Attorneys General contend that Rivera has a particularly strong case inappropriate for settlement.

Accordingly, this factor weighs in favor of final approval.

2.    Risk, expense, complexity, and likely duration of further litigation

It is generally accepted that the prospect of immediate recovery under a settlement is nearly always preferable to the mere potential for greater recovery after protracted litigation and trial. Nat'l Rural Telecomms., 221 F.R.D. at 526. "It has been held proper to take the bird in hand instead of a prospective flock in the bush." Oppenlander v. Standard Oil Co. (Indiana), 64 F.R.D. 597, 624 (D. Colo. 1974).

There are several reasons why continued litigation would be particularly risky for the class. First and foremost, BSN's shaky financial condition raises the significant possibility that the class will be left with no relief at all, regardless of the merits of the suit. Rivera's financial expert reviewed BSN's finances and concluded that BSN faced a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1306 JVS (RNBx) | | Date | November 6, 2009 |
|---|---|---|---|---|
| Title | Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al. | | | |

significant risk of bankruptcy due to the cancellation of its line of credit and continues to face the risk of bankruptcy due to the unfavorable economic climate. (Skorheim Decl. ¶ 4.) Continued litigation in this matter damages BSN's financial viability. (Id.) In fact, BSN has represented that its current line of credit is contingent on resolution of this matter and approval of the proposed settlement. (Cinieri Decl. ¶¶ 7, 10.)

Furthermore, the Court finds that there is significant risk and expense associated with continued litigation. The Court notes, based on its familiarity with the facts and issues involved, that this is a complex action, requiring extensive expert analysis. Proceeding to trial would add great expense; the class would have to finish expert and fact discovery, prepare and defend against summary judgment motions, go through trial, and defend against the inevitable appeal should the class win a judgment. Even if the class wins on the merits, it may have to participate in bankruptcy proceedings to actually recover any judgment. It would likely take years, the recovery may be minimal, and the expense would be large.

The Attorneys General do not argue that there is little risk to the class that continued litigation would reduce their prospective recovery. However, they do argue that "because the proposed payout here is of negligible value, the small risk of receiving nothing is worth taking." (Reply to Resp. to Amici Curie Br. 5 (quoting Figueroa v. Sharper Image Corp., 517 F. Supp. 2d 1292, 1328 (S.D. Fla. 2007).) The Court notes that the risk of no recovery here, unlike that in Figueroa, is not small. The risk of bankruptcy here appears to be significant. Even assuming BSN's ability to pay a judgment, Rivera's burden of proving liability and damages in this case, and the associated expenses, raise a substantial risk of a negligible or nonexistent payout for the class. The Court will address the Attorneys General's objections to the amount of the Settlement below.

Accordingly, this factor weighs in favor of final approval.

3.    Risk of maintaining class action status throughout the trial

As BSN has noted, a nationwide damages class under Rule 23(b)(3) would not have existed without the Settlement. (See Docket No. 361 at 5.) Rivera was specifically denied certification for that class in the Court's November 13, 2008 Order based on manageability issues. (Docket No. 180.) This class was provisionally certified only for settlement purposes. (Docket No. 361 at 5.) Thus, if the case proceeded to trial, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV 07-1306 JVS (RNBx) | Date | November 6, 2009 |
|---|---|---|---|

| Title | Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al. |
|---|---|

nationwide damages class would not exist.

Moreover, BSN has represented that it would contest certification of the statewide damages class based on individual reliance issues. (Def's. Resp. to Amicus Br. 7.) While not expressing an opinion on the merits of BSN's contention, the Court notes that it certainly raising some risk of decertification of the statewide damages class.

Accordingly, this factor weighs in favor of final approval.

4.    Amount offered in settlement

"[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." Id. at 527. The Settlement provides four separate avenues of recovery for the class: (1) a permanent injunction against further marketing or selling products claimed to contain CEM3; (2) a rebate program on future sales of the relevant products, with a contingent 25% discount; (3) a cash refund for sales of the relevant products during the class period; and (4) a charitable contribution.

The Attorneys General and Starnes bring their main objections here, arguing that the Settlement does not provide significant value to the class particularly in light of the requested attorneys' fees. The Court will consider each avenue of relief in turn, along with the objectors' arguments.

a.    The Injunction

The Settlement provides for a permanent injunction prohibiting BSN from selling, marketing, advertising, and/or manufacturing any products claimed to contain CEM3. In the November 13, 2008 Order regarding class certification, this Court found that "Rivera's request for injunctive relief predominates over the request for monetary relief. Given that it is unlikely that any named plaintiff or class member will recover more than a few hundred dollars, the Court presumes that the plaintiffs are primarily interested in injunctive relief." (Docket No. 180.) Thus, the permanent injunction accomplishes a significant goal in this litigation.

Starnes argues that the injunction provides little value to the class because BSN has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1306 JVS (RNBx) | | Date | November 6, 2009 |
|---|---|---|---|---|

| Title | Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al. |
|---|---|

already stopped selling CEM3 products. The Court disagrees. BSN is currently under no obligation to continue its voluntary sales freeze. An injunction would prevent BSN from marketing the relevant products in the future. Moreover, Starnes overlooks the fact that BSN likely stopped selling the products because of this litigation. Should this matter end without an injunction, there is nothing to stop BSN from resuming sales of products represented as containing CEM3. The Court finds that the injunction provides real, if unquantifiable, value to the class.

Starnes also objects because the benefits of the injunction are not specific to class members. The Court does not see how, or why, an injunction on CEM3 sales to class members only would be carried out. The fact that the injunction may be overinclusive in its benefits does not diminish its value to the class.

The Attorneys General's main objection to the injunction is that it is ineffectual because it puts no obligation on BSN to take steps to stop downstream marketing of products claimed to contain CEM3. The Attorneys General attach exhibits showing that online retailers such as Amazon.com continue to market CEM3 products. (Reply to Resp. to Br. Amici Curiae, Ex. A.) The Court agrees that the value of the injunction is not as great as one which would require disclaimers, recalls, or an advertising campaign. However, it stands to reason that BSN's freeze on CEM3 product sales will trickle down and eventually stop downstream retailers from marketing the products as such. The fact that retailers are still selling the offending products now, before the imposition of the permanent injunction, does not necessarily mean that an injunction will be ineffectual. And while other injunctive relief might be desirable, it is not the Court's duty to ensure that the class gets the best conceivable deal. The Court is limited to ensuring that the Settlement is fair and adequate.

b.    The Rebates

The Settlement provides that BSN will attach $3 to $5 rebate coupons to future sales of the relevant products for 2 to 3 years. "[C]ourts in numerous cases have recognized that coupon settlements can provide effective relief for class members." In re Mexico Money Transfer Litigation (Western Union and Valuta), 164 F. Supp. 2d 1002, 1018 (N.D.Ill. 2000) (citations omitted).

Here, the Court notes that this is not a traditional coupon settlement. Rebates will

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1306 JVS (RNBx) | Date | November 6, 2009 |
|---|---|---|---|

| Title | Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al. |
|---|---|

not be provided to class members specifically, but to all future purchasers of the relevant products. Rivera has expressed a couple reasons for using a rebate settlement in this instance. First, BSN's cash flow problems limit the amount it can immediately put forward. Therefore, the rebate was calculated as a way to provide relief to the class in a forward-looking manner. Second, it was difficult to identify individual class members, because the products were purchased from a vast array of online and storefront retailers. The parties found that BSN customers tend to be loyal to the brand and continue to purchase BSN products, making a forward-looking rebate program a reasonable way to put value in the hands of class members.

Starnes objects to the rebate and discount program because it puts no limit on the prices that BSN can charge for its products, making the obligation illusory. The Court disagrees. If BSN raises its prices on the products by the amount of the rebate or discount, this would likely be a breach of BSN's implied duty of good faith and fair dealing. Moreover, the Court is confident that market forces will discourage such price increases. See id. at 1029. Certainly, Starnes and the Attorneys General are likely to be vigilant.

Starnes also objects to the fact that the rebate program is not specific to class members. The Court notes that the rebate program was structured this way precisely because of the difficulty in identifying individual class members. The Court believes that the rebate program is a reasonable way of overcoming this difficulty.

The Attorneys General main objection is that the rebate program rewards BSN by attracting more sales and forcing class members to purchase BSN products to receive any relief.[5] This amounts to a broader attack on coupon settlements in general. In fact, the Attorneys General cite the National Association of Consumer Advocates ("NACA") Class Action Guidelines - Revised, 1590 PLI/Corp 285 (2007), for the proposition that coupon settlements should be disfavored. The NACA suggestions on coupon settlements are "unofficial and have never been adopted by a court." In re Mexico Money Transer, 164 F. Supp. 2d at 1029. The Court declines to adopt NACA's suggestion here. Particularly in the context of this case, the Court finds that rebates are a reasonable way to put money in the hands of class members who would otherwise be difficult to identify

---

[5] The Attorneys General also object to the valuation of the rebate program as it relates to the award of attorneys' fees. The Court will consider this objection in its discussion of attorneys' fees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.    SACV 07-1306 JVS (RNBx)                    Date    November 6, 2009

Title    Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al.

and the rebates allow BSN to offer more than they would in a pure cash settlement, given its treacherous financial position.[6] See id. at 1029-30 (approving a coupon settlement where a cash settlement would have been of significantly less value).

The Attorneys General also contend that there is no obligation that the rebate be paid in cash to the purchaser. This objection appears to be purely hypothetical as the claims administrator has made clear that the rebates will be in the form of checks to the purchasers. (Carmin Decl. ¶ 20.) Moreover, the parties have amended the settlement to specifically state that the rebates will be paid in cash. (Joint Filing re Final Approval ¶ 6.)

Similarly, the Attorneys General object to the 25% contingent discount on the grounds that it is ambiguous as to what sales the discount will apply. The Court assumes that "direct retail sales" refers to sales from BSN to the consumer. In any case, this is not sufficient reason to reject the settlement entirely.

      c.    The Refunds

The Settlement provides that class members can receive a cash refund of $15 per bottle of the CEM3 products they purchased during the class period, uo to a maximum of $60. The overall cash refund is capped at $1.5 million.[7] So far, only 280 class members have applied for the cash refund. (Mot. Br. 8.) However, the parties have agreed to reopen the claims period, provide additional notice, and modify the requirements for a valid claim. (Joint Filing re Final Approval ¶¶ 1-5; Exs. A, B.) The Court will address these changes below.

Both Starnes and the Attorneys General object to the overall cap as being too low in light of the $6 million in attorneys' fees and expenses that Class Counsel is requesting. They point out Congress's findings in enacting the Class Action Fairness Act ("CAFA"),

---

[6] While the Court is mindful that the rebates are not a significant deterrent to BSN because it may result in more sales, deterrence is not the only goal of class action settlements. The purpose of the rebates is to provide value to the class. Other provisions of the Settlement provide some deterrence.

[7] Rivera consistently refers to the cap as a cash "fund." The Court notes that this is not a common fund. BSN has no obligation to pay the entire $1.5 million; it only represents the maximum. BSN could conceivably pay nothing under the cash refund if there were no valid claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-1306 JVS (RNBx) | Date | November 6, 2009 |

| | |
|---|---|
| Title | Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al. |

28 U.S.C. § 1711 et seq., that

> Class members often receive little or no benefit from class actions, and are
> sometimes harmed, such as where--
> (A) counsel are awarded large fees, while leaving class members with
> coupons or other awards of little or no value.

Class Action Fairness Act of 2005, Pub.L. 109-2, § 2, Feb. 18, 2005.

The Court will address arguments about the attorneys' fees below. However, if the objectors are arguing that BSN has the ability to pay more, this is not germane to the Court's analysis. The Court does not consider what parties could have agreed to; rather, the Court only considers whether the Settlement before it is fair and adequate to the class. Putting aside the attorneys' fees request for a moment, the Court finds the $1.5 million cap to be reasonable in light of the risks of receiving little or no relief and the fact that injunctive relief was the main purpose behind this litigation.

The original settlement agreement contained a $30 individual cap, which the Attorneys General objected to as unreasonable. The Court agreed in its October 19, 2009 tentative order and directed that the cap be raised in light of the low number of claims. At that time, the claims administrator had received only 280 timely claim. (Carmin Decl. ¶ 17.) Of these, two were duplicates and 106 failed to attach a proof of purchase. (Id. at ¶¶ 17-18.) BSN would have had to refund a maximum of $5,160. The parties have since agreed to double the claims cap to $60 per individual. (Joint Filing re Final Approval ¶ 4.) The Court finds this new cap to be reasonable in light of the other modifications to the settlement, particularly the additional notice and requirements for a valid claim.

Starnes and the Attorneys General also objected to the requirement in the original settlement of a receipt to receive a refund. The parties have since amended the agreement to require either a proof of purchase or a declaration under penalty of perjury. (Joint Filing re Final Approval ¶ 4; Ex. B.) The Court believes that requiring a receipt or an oath is not unduly burdensome and is a reasonable way to identify legitimate class members.

d.    The Charitable Contribution

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-1306 JVS (RNBx) | Date | November 6, 2009 |

| | |
|---|---|
| Title | Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al. |

Finally, the Settlement provides that BSN will donate $1 million worth of BSN products over five years to charities of its choice, subject to class approval.

Both the Attorneys General and Starnes argue that this provision is not beneficial to the class. The Court agrees. First of all, the charities are chosen by BSN, not the class. There is no obligation to choose charities in which the class would have interest. Second, cy pres charitable contributions are generally used when a common fund is not depleted by class members' claims. The remainder is distributed to charity to serve the general purposes of the Settlement. Here, the charitable contribution is not the residue of a common fund, nor is it tied to the general purposes of the Settlement.

However, this is not to say that the Court disapproves of the charitable contribution. The Court merely observes that the contribution provides negligible value to the class and should not be taken into account in weighing whether the Settlement as a whole is unfair or unreasonable or in the attorneys' fees analysis.

5.    Extent of discovery completed and the stage of the proceedings

"A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case. . . . A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." National Rural Telecommunications Cooperative, 221 F.R.D. at 527-28 (citations omitted).

The Settlement here is not an early one. The parties have completed extensive fact and expert discovery that included written discovery, depositions, document reviews, investigation, expert analysis of BSN's products, marketing practices, and finances. Rivera asserts that he:

> propounded at least 15 sets of written discovery, responded to the 26 sets of written discovery served by Defendants, [took] and/or defended over 28 depositions all over the country, including New York, New Jersey, Florida, Georgia, and California, and [] analyzed over 500,000 pages of documents produced by Defendants. . . . [e]ach side designated 4 expert witnesses and [Rivera was] prepared to designate several other rebuttal experts when the

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV 07-1306 JVS (RNBx) | | Date | November 6, 2009 |
|---|---|---|---|---|

| Title | Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al. |
|---|---|

Settlement was signed."

(Mot. Br. 19-20.)

The Court finds that the Settlement was reached after the parties had thoroughly examined the factual and legal bases of the disputed claims. The Court also finds that the Settlement is the product of months of arms-length negotiations. The Honorable Ronald M. Sabraw (Ret.) ("Sabraw") conducted several mediation sessions before a tentative settlement was reached in this case. (Mot. Br. 21.) In between and following the two face-to-face mediation sessions, there were numerous telephonic conference calls and email correspondence between the parties and the mediator. (Id.) These factors strongly weigh in favor of the Court's approval of the Settlement.

### 6.    Experience and views of counsel

"Great weight" is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. . . . Thus, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." National Rural Telecommunications Cooperative, 221 F.R.D. at 528.

Class Counsel for this case are Robinson, Calcagnie & Robinson Inc. and Call, Jensen & Ferrell. Judge Sabraw declares that, with respect to the mediation, "[a]ll parties were represented by very skilled, knowledgeable and thoroughly prepared lawyers [who] were experienced in class actions and were vigorous advocates for their clients." (Mot. Br. 21.) The Court finds that class counsel have demonstrated their competence during the course of this litigation.

Class Counsel have negotiated at arms length and have agreed that the proposed Settlement is a fair, adequate, and reasonable resolution of the dispute in this action. There is no evidence that the Settlement is the result of fraud or collusion.

Therefore, the Court finds that this factor weighs heavily in favor of granting the settlement.

### 7.    Presence of governmental participant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 07-1306 JVS (RNBx)                     Date    November 6, 2009

Title    Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al.

No governmental entity was a party in this case. This factor is neutral.

### 8.    Reaction of the class members to the proposed settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." DIRECTV, 221 F.R.D. at 529.

The parties note that there has not been a single opt-out of the Settlement and only one objector. They point to this as an extremely favorable response to the Settlement. The Court is not so sure. As the Attorneys General have noted, the lack of opt-outs could just as easily be due to a lack of notice or unreasonable opt-out requirements. They note that only 278 unique claims for cash refunds have been filed.

At this point, the Court cannot judge whether the overall lack of response to the Settlement is due to deficient notice or to approval by the class. However, based on those who have responded, the overall reaction to the Settlement seems favorable. Over 15,000 direct notices were sent out by mail and email. (Carmin Decl. ¶¶ 6-10.) 278 have sought refunds, none have opted-out, and only one has objected. Based on this admittedly small sample, the Court finds that the overall reaction to the Settlement to be favorable.

Accordingly, this factor weighs in favor of final approval.

### C.    Other Objections

The Attorneys' General also object to the release language, the opt-out procedure, and the Settlement's lack of deterrence value. The Court will consider each in turn.

### 1.    Release

The Attorneys General argue that the release language is overly broad. The Settlement release reads as follows:

Plaintiffs and the Settlement Class shall fully release and discharge
Defendants . . . from all claims, demands, actions, and causes of action of
any kind or nature whatsoever . . . arising out of or relating to the content of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1306 JVS (RNBx) | Date | November 6, 2009 |
|---|---|---|---|

| Title | Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al. |
|---|---|

any of the CEM3 Products or the advertising, packaging, labeling,
promotion, sale and distribution of the CEM3 Products, including all claims
which were alleged or which could have been alleged by Plaintiffs, Class
Counsel, the Settlement Class and/or any Settlement Class Member against
the Discharged Parties in the Action . . . . However, this definition expressly
excludes claims for personal injury.

(Hardin Decl., Ex. 1 § III.C.)

The Attorneys General object to the fact that the release covers class members who
do not actually receive notice, do not file claims for a refund or benefit from BSN product
rebates in the future, or do not bother to opt out. The Attorneys General would prefer
that the release cover only those who receive a refund or actually sign a release.

This amounts to another attack by the Attorneys General on the class action vehicle
in general. Releases commonly cover those who do not receive actual notice, do not elect
to opt-out, or do not file a claim. So long as notice is constitutionally sufficient and the
opt-out procedure reasonable, the Court sees no reason to deviate from common practice
of releasing all class members, not just those who actively respond. The Court finds the
release language reasonable in scope.

      2.    <u>Opt-out Procedure</u>

The Attorneys General also object to the requirements to opt out. The Settlement
notice provides that a class member who wishes to opt out must send a letter or postcard
to the specified address, with the member's name, address, "the specific BSN product(s)
[] purchased, the date [the member] purchased the product(s)," and the desire to opt out.
(Carmin Decl., Ex. B.) The Attorneys General argue that most class members will not be
able to provide this information. The Court disagrees. The requirement of the specific
product and date, or at least approximate date, is a reasonable way to make sure that
individuals are actually members of the class. The Court does not find this procedure to
be unreasonable.

      3.    <u>Lack of Deterrence</u>

Finally, the Attorneys General argue that the Settlement does not sufficiently deter

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 07-1306 JVS (RNBx) | Date | November 6, 2009 |

| | |
|---|---|
| Title | Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al. |

BSN from committing future acts. The Court disagrees. The settlement provides for an injunction, an obligation to provide rebates and discounts, a potential $1.5 million in cash refunds, $1 million in charitable donations, as well as attorneys' fees, expenses, and incentive awards. These are inflexible obligations imposed on BSN by an outside party. Moreover, this very litigation has had demonstrable deterrent effect, shown by BSN's voluntary cessation of CEM3 product sales. There is no reason to think that BSN will not be deterred from committing future acts of misleading advertising or labeling.

    D.    <u>Conclusion</u>

The Court recognizes that this is not an easy balancing of the <u>Staton</u> factors. The Settlement does not provide great value to the class. The rebates require class members to pay more to BSN. The refunds are limited on an individual basis and subject to an overall cap. The charitable contribution provides negligible value to the class.

However, these considerations must be weighed against the realities of this case. The primary relief sought in this case was an injunction—indeed, a nationwide damages class would not have been certified without the Settlement. Rivera faced several substantial legal barriers to proving liability and damages. And, perhaps most importantly, BSN faces a genuine prospect of bankruptcy which would likely deprive the class of any relief at all. There is no evidence of collusion or fraud here.

This is not a perfect settlement. However, the Court's standard of review is not "perfection," it is fairness and reasonableness. The Court also notes that the parties have taken substantial steps to address the concerns the Court expressed in its earlier tentative. In light of all the <u>Staton</u> factors, the Court approves the Settlement as fair and reasonable.

## IV.  <u>NOTICE</u>

"Adequate notice is critical to court approval of a class settlement." <u>Hanlon</u>, 150 F.3d at 1025; <u>see</u> Fed. R. Civ. P. 23(e)(1)(B). Because the Court certified a class under Rule 23(b)(3), the Court must find that notice was the best

> practicable under the circumstances, including individual notice to all
> members who can be identified through reasonable effort. The notice
> must clearly and concisely state in plain, easily understood language:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-1306 JVS (RNBx) | Date | November 6, 2009 |

| | |
|---|---|
| Title | Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al. |

(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Here, notice of the original settlement agreement included three parts: (1) individually-mailed or emailed notice to class members identified from Defendants' records; (2) establishment of a dedicated website; and (3) publication on two occasions in USA Today. (Hardin Decl., Ex. 1 at 10-11.) The notice explained that class members would be able to obtain a claims form either online or by called the phone number provided. (Id. at 11.)

Notice for the reopened claims period will proceed as follows: (1) individually-mailed or emailed notice to class members identified from Defendants' records; (2) a press release to various news, bodybuilding, and fitness websites; (3) a conspicuous link on Defendants' website; and (4) the continuation of the existing settlement website. (Joint Filing re Final Approval ¶¶ 2, 3, 4.)

The Attorneys General argue that the notice used in this action was not the "best notice practicable under the circumstances" for a variety of reasons. First, they argue that the Settlement imposes no obligation on BSN to use reasonable efforts to obtain contact information for its customers. Actual notice, however, was sent to 10,775 customers via email and 5,370 customers via standard mail. (Carmin Decl. ¶¶ 6-7.) 2,078 notices were sent via standard mail for customers whose emails had "bounced back." (Id. at 9.) The Court finds that BSN's direct mailing campaign was the best practicable under the circumstances.

The Attorneys General argue that the website was difficult to find.[8] However, their own Google searches show that notice of the suit was getting out to the relevant

---

[8] The Attorneys General also make the disingenuous argument that the phone number provided on one page of the website was inaccurate. This was clearly a typo, the correct number was provided on other sections of the website, and the typo would not undermine the merits of the settlement in any case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1306 JVS (RNBx) | | Date | November 6, 2009 |
|---|---|---|---|---|
| Title | Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al. | | | |

community. The Court's own Google search for "BSN settlement" provided a link to the settlement website in a scant 30 seconds. The Court does, however, recognize that one would not know to search for the Settlement information unless one had notice of a settlement at all. The question is how to provide that initial notice to the unaware class member.

The parties have adequately addressed this issue through their supplemental notice procedure, including press releases to relevant websites and a link on Defendants' own website. As for the original notice plan, it was specifically approved by the Court in its Preliminary Approval Order as constitutionally sufficient, and the Court sees no reason to reverse that finding.

The Court finds that class notice was fair and reasonable. Therefore, the Court approves the original notice plan as carried out, and the notice plan the parties have submitted regarding the reopened claims period.

## V.    ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

### A.    Attorneys' Fees

The Ninth Circuit "require[s] only that fee awards be reasonable in the circumstances." Rodriguez, 563 F.3d at 967. As the Ninth Circuit recently recognized in Rodriguez, "[t]he district court may award fees pursuant to either a lodestar or a straight percentage of the settlement fund." Id. (citing Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000)).

Although the Settlement contains a coupon provision, a lodestar analysis is appropriate because the Settlement provides injunctive relief and a cash refund provision. See 28 U.S.C. § 1712(b). Since it is difficult to judge the value of the injunctive relief or the rebate provision, the Court finds that lodestar analysis is appropriate. See Hanlon, 150 F.3d at 1029.

The lodestar method requires the Court to multiply the "number of hours reasonably expended by a reasonable hourly rate." Hanlon, 150 F.3d at 1029. That

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1306 JVS (RNBx) | | Date | November 6, 2009 |
|---|---|---|---|---|

| Title | Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al. |
|---|---|

figure, the lodestar, may then be "adjusted upward or downward to account for several factors." Id. These factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975)

It is apparent that the Attorneys General's and Starnes's primary objection to the Settlement overall is the amount of attorneys' fees requested by Class Counsel. They argue that attorneys' fees requested are not commensurate with the value obtained by the class in the Settlement. The Court found that the substance of the Settlement, aside from the request for attorneys' fees, was fair and reasonable to the class.

However, that finding does not compel approval of Class Counsel's request for fees. With this in mind, the Court turns to the request.

### 1.    Reasonable Hours

Class Counsel has provided the Court with billing statements totaling the hours it spent litigating this case. Call, Jensen & Ferrell declares that it spent 5071.5 attorney hours over the course of two years on this case, along with 1817.55 paralegal hours. (Hardin Decl. ¶¶ 32-33.) Robinson, Calcagnie & Robinson declares that it spent 604.50 attorney hours on this case. (Robinson Decl. ¶ 12.) Class Counsel in this case faced a well-funded defense team that incurred approximately $4 million in legal fees.[9] They were required to litigate class certification, undergo extensive discover, investigate claims

---

[9] Class Counsel originally estimated BSN's attorneys' fees to be over $6 million. (Hardin Decl. ¶¶ 17.) However, it was clarified at oral argument that BSN only incurred roughly $4 million in fees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1306 JVS (RNBx) | Date | November 6, 2009 |
|---|---|---|---|

| Title | Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al. |
|---|---|

of financial duress, as well as conduct pre-filing investigation involving the chemistry of the substances at issue here. (Id. at 17-18.) In light of the extensive litigation here, the Court finds the stated hours reasonable.

      2.    Reasonable Rates

The named partners for both Class Counsel firms billed from $650 to $750 per hour. (Id. at ¶ 32; Robinson Decl. ¶ 12.) The remaining partners (or "shareholders") for Call, Jensen & Ferrell billed from $450 to $600 per hour. (Hardin Decl. ¶ 32, Ex. 3 at 52-136.) Non-partners at both firms billed at $400 per hour. (Id.; Robinson Decl. ¶ 12.) While the Court believes that $750 per hour is at the high end, the rates stated are within the range of reasonable rates for attorneys in Southern California litigating complex class actions.

      3.    Lodestar Multiplier

The combined lodestar of both Class Counsel firms is calculated to be $3,853,107. (Hardin Decl. ¶ 35.) Class Counsel asks for an approximately 1.5 multiplier. In determining whether an increase is warranted here, the Court considers the Kerr factors.

As the docket in this case indicates, Class Counsel spent a great deal of time and effort litigating this matter, and the Court recognizes that the litigating a nationwide class action requires particular skill and experience, especially when across the table from a prominent firm like Reed Smith LLP. The Court also notes that a 1.5 multiplier is within the range of what other courts have awarded, and that Class Counsel worked entirely on a contingent basis and have risked receiving nothing at all for two years of litigation. Finally, the Court recognizes that Class Counsel have great experience and reputation. These factors weigh in favor of an increase of the lodestar.

However, the Court disagrees with Class Counsel that the result in this case is exceptional. The cash value of the Settlement to the class is minimal. The value of the rebates is difficult to quantify, and the Court notes that it is available to anyone, not just class members. The charitable contribution offers little or no value to the class. The refund offers some value, but the cap of $1.5 million is well below the $3.8 million lodestar figure. The main value to the class is the injunction; however, it is unquantifiable, and, as the Attorneys General have noted, the lack of any downstream

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-1306 JVS (RNBx) | Date | November 6, 2009 |
|---|---|---|---|

| Title | Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al. |
|---|---|

control over marketing reduces the overall value.

Class Counsel contends that the settlement was a positive result given the financial status of BSN. However, the Court does not see how Class Counsel should benefit from BSN's financial status. If the class is going to take a hit on recovery, it does not seem fair that the attorneys should be spared those consequences. On the face of the Settlement, it seems patently unfair for the class to be essentially limited to an injunction, rebates, and a refund capped at $1.5 million while Class Counsel receives more than $6 million.

In addition, Class Counsel argues that this case prevented them from other remunerative employment. While this may be true in the sense that any employment precludes other employment, the Court does not see how this case was especially burdensome. Class Counsel spent approximately 5,600 hours over the course of two years using 15 attorneys. This works out to approximately 190 hours per attorney per year. This is not particularly burdensome or preclusive of other employment.

The Court also finds that, notwithstanding some of the scientific issues involved, the legal issues of class certification, and proving liability, were not particularly novel or difficult and that there was nothing particularly undesirable about taking this case.

The Court, having balanced the Kerr factors, finds that a 1.5 multiplier is not warranted here. That award would simply not be commensurate with the value of the settlement. Rather, the Court believes that no multiplier should be applied. The value of the settlement counsels a downward departure, but Class Counsel's experience, skill in this matter, and contingent fee status weigh in favor of an upward departure. Therefore, the Court takes the middle road.

Accordingly, Class Counsel is awarded $3,853,107 in attorneys fees.

B.    Expenses

Attorneys are generally entitled to reasonable litigation expenses where they have reached a positive result for the class. Lachance v. Harrington, 965 F. Supp. 630, 651 (E.D. Pa. 1997) (citing In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 820 n.39 (3d Cir. 1995)). Reasonable litigation expenses include those "expenses that would typically be billed to paying clients in non-contingency

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 07-1306 JVS (RNBx)    Date    November 6, 2009

Title    Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al.

matters." Knight v. Red Door Salons, Inc., No. 08-01520 SC, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009) (citing Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994)).

As documented in the individual firm declarations, the expenses incurred in this litigation total $319,585.15 (Hardin Decl. ¶ 36.) This sum reflects expenses typically billed by attorneys to paying clients, such as fees for court costs, experts, online research, depositions, and travel connected with litigation. (Id.) Such "out-of-pocket costs for telephone, telecopier, air and local couriers, postage, photocopying, WESTLAW research, secretarial overtime, and counsels' travel expenses are routinely billed to fee-paying clients, and thus are all compensable as part of a reasonable attorney's fee." Brown v. Pro Football, Inc., 839 F. Supp. 905, 916 (D.D.C. 1993) (citations omitted).

Accordingly, the Court grants Class Counsel $319,585.15 in expenses to reimburse Class Counsel for their respective expenses.

C.    Incentive Awards

Finally, the Settlement permits Michael Rivera and Daniel Abell to apply for an incentive award not to exceed $12,500 to Rivera or $6,250 to Abell. Neither Starnes nor the Attorneys General object to their requests.

As the Ninth Circuit observed in Rodriguez,

[i]ncentive awards are fairly typical in class action cases. . .[,] are discretionary, and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.

563 F.3d 948, 958-59 (citations omitted). Because this case could not have proceeded without the participation of Rivera and Abell, the Court grants $12,500 to Rivera and $6,250 to Abell. Rivera spent over 100 hours, and Abell over 50 hours on this case. These incentive awards seem reasonable to reward the class representatives for their participation in this action.

VI.    CONCLUSION

Case 8:07-cv-01306-JVS-RNB    Document 384    Filed 11/06/2009    Page 26 of 26

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-1306 JVS (RNBx) | Date | November 6, 2009 |

| | |
|---|---|
| Title | Michael Rivera, et al. v. Bio Engineered Supplements & Nutrition, Inc., et al. |

For the foregoing reasons, the Court GRANTS final approval of class certification and the settlement, as amended by the parties following the previous hearing on final approval.

Class Counsel has made the requisite showing for reasonable attorney fees, expenses, and incentive awards. Accordingly, the Court awards Class Counsel $3,853,107 in attorney fees, $319,585.15 in reimbursement of expenses, and an incentive award of $12,500 to Michael Rivera and $6,250 to Daniel Abell.

Plaintiff's counsel to submit a revised final order within one week.

IT IS SO ORDERED.

|  | : | 15 |
|---|---|---|
| Initials of Preparer | ts | |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "Agreement") is made and entered into by and between the following parties:  Plaintiffs Michael Rivera and Daniel Abell, individually and on behalf of the Settlement Class ("Plaintiffs" and/or "Class Representatives"), and defendants Bio-Engineered Supplements & Nutrition, Inc. ("BSN") and Christopher Ferguson ("Ferguson" and, with BSN, "Defendants") and their respective counsel of record in the action entitled *Michael Rivera, et al. v. Bio-Engineered Supplements & Nutrition, Inc. et al.,* Case No. SACV07-1306 JVS (the "Action") in the United States District Court for the Central District of California (the "Court").

### I.        DEFINITIONS

As used in this Agreement and all related documents, the following terms have the following meanings:

A.        "Authorized Claimant" means any Settlement Class Member who timely submits a valid Claim Form.

B.        "CEM3 Products" means Cellmass®, Nitrix ®, and N.O.-Xplode™ products sold by Defendants during the Class Period that were labeled and/or represented as containing Creatine Ethyl Ester Malate or CEM3.

C.        "Claims Deadline" means the date forty-five (45) days after the last date on which the Publication Notice is published.

D.        "Claim Form" means the form Settlement Class Members must submit to participate in the refund provisions of the settlement under this Agreement substantially in the form attached as Exhibit "A."

E.        "Class Counsel" means Call, Jensen & Ferrell, APC and Robinson, Calcagnie & Robinson Inc.

F.        "Class Period" means November 6, 2003 through the date of Preliminary Approval.

**EXHIBIT "2"**

G.    "Effective Date" means (a) if no objection is raised to the proposed settlement at the fairness hearing, the date on which the final approval order and judgment is entered; or (b) if any objections are raised to the proposed settlement at the fairness hearing, the latest of (i) the expiration date of the time for the filing or notice of any appeal from the final approval order and judgment, (ii) the date of final affirmance of any appeal of the final approval order and judgment, (iii) the expiration of the time for, or the denial of, a petition for writ of certiorari to review the final approval order and judgment and, if the certiorari is granted, the date of final affirmance of the final approval order and judgment following review pursuant to that grant; or (iv) the date of final dismissal of any appeal from the final approval order and judgment or the final dismissal of any proceeding on certiorari to review the final approval order and judgment.

H.    "Full Class Notice" means notice of the proposed settlement to be provided to Settlement Class Members under section V. of the Agreement substantially in the form attached as Exhibit "B."

I.    "Objection/Exclusion Deadline" means the date thirty (30) days after the last date on which the Publication Notice is published.

J.    "Parties" means Class Representatives and Defendants.

K.    "Preliminary Approval" means the date the Court preliminarily approves the settlement of the Action, including but not limited to, the terms and conditions of this Agreement.

L.    "Products" means Defendants' Cellmass®, Nitrix®, and N.O.-Xplode™ products.

M.    "Publication Notice" means notice of the proposed settlement to be provided to Settlement Class Members under section V. of the Agreement substantially in the form attached as Exhibit "C."

N.    "Settlement Administrator" means the entity that will administer the settlement, to be agreed upon by the Parties within ten (10) business days of the execution of this Agreement.

O.     "Settlement Class" means all persons who purchased CEM3 Products in the United States, its territories, or at any United States military facility or exchange for personal use and not for resale from November 6, 2003 through the date of Preliminary Approval. Excluded from the Settlement Class are all persons who validly opt out of the settlement in a timely manner, counsel of record (and their respective law firms) for the Parties, Defendants and any of their parents, affiliates, subsidiaries, independent service providers and all of their respective employees, officers, and directors; the presiding judge in the Action, and all of his relatives within the third degree of consanguinity; any natural person or entity that entered into a release with Defendants prior to the Effective Date concerning the CEM3 Products; and, any natural person or entity that received any compensation from Defendants to endorse the CEM3 Products.

P.     "Settlement Class Member" means any member of the Settlement Class.

## II.     LITIGATION BACKGROUND

A.     On November 6, 2007, Plaintiffs filed the Action on behalf of themselves and all others similarly situated in the United States alleging unjust enrichment, fraud, and violation of California's unfair competition law, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL"). Specifically, the Action alleged that Defendants made false and misleading statements in their labeling and advertising of the CEM3 Products. The Action sought, among other things, injunctive relief, compensatory damages, restitution, and punitive damages.

B.     On February 1, 2008, Plaintiffs moved to certify: (1) a nationwide injunctive relief class for fraud pursuant to Fed. R. Civ. P. 23(b)(2): (2) a nationwide damages class for fraud pursuant to Fed. R. Civ. P. 23(b)(3) or in the alternative a California-wide class regarding the same; (3) a nationwide damages/restitution class for unjust enrichment pursuant to Fed. R. Civ. P. 23(b)(3) or in the alternative a California-wide class regarding the same; and (4) a California-wide damages/restitution class for violation of the UCL pursuant to Fed. R. Civ. P. 23(b)(3).

C.     On November 13, 2008 the Court certified: (1) a nationwide injunctive relief class for fraud pursuant to Fed. R. Civ. P. 23(b)(2): (2) a California-wide damages class for fraud

pursuant to Fed. R. Civ. P. 23(b)(3); (3) a California-wide damages/restitution class for unjust enrichment pursuant to Fed. R. Civ. P. 23(b)(3); and (4) a California-wide damages/restitution class for violation of the UCL pursuant to Fed. R. Civ. P. 23(b)(3). The Court declined to certify nationwide damage/restitution classes for fraud and unjust enrichment at that time, finding that Plaintiffs had not met their burden of proving manageability.

        D.     Defendants deny any liability or wrongdoing of any kind associated with the claims alleged in the Action, and further contend that, for any purpose other than settlement, this Action is not appropriate for class treatment.

        E.     Class Counsel has conducted a thorough investigation into the facts surrounding the Action. This investigation included but was not limited to: extensive product testing and analysis; factual research; legal research; collecting and reviewing extensive amounts of documents and data; propounding and reviewing numerous discovery requests as well as hundreds of thousands of produced documents; and depositions. As a result of this extensive process, Class Counsel was able to review thoroughly the claims of the Settlement Class Members and Defendants' policies, practices, and procedures as they relate to the design, manufacture, sale, and distribution of the CEM3 Products.

        F.     Beginning in approximately January 2009, counsel for the Parties engaged in a series of meetings and discussions regarding possible settlement of the Action. On January 9, 2009 and March 10, 2009, the Parties mediated the case before the Honorable Ronald Sabraw (Ret.). Since then, the Parties have engaged in substantial additional arms-length negotiations, which included the production and review of thousands of pages of additional documents, multiple conferences with the Court, and additional depositions. The result was a settlement of the Action in its entirety, culminating in this Agreement.

        G.     Based on the above-outlined investigation, the current state of the law, the expense, burden, and time necessary to prosecute the Action through trial and possible appeals, the risks and uncertainty of further prosecution of this Action considering the defenses at issue, the sharply contested legal and factual issues involved, and the relative benefits to be conferred

upon Plaintiffs and Settlement Class Members pursuant to this Agreement, Class Counsel has concluded that a settlement with Defendants on the terms set forth herein is fair, reasonable, adequate, and in the best interests of the Settlement Class in light of all known facts and circumstances. Further, in part because of the Action, Class Counsel is informed and believes that Defendants have changed their policies, practices, and procedures with respect to the design, manufacture, and sale of the CEM3 Products, including but not limited to reformulation of the CEM3 Products and cessation of all marketing and advertising of BSN products as containing Creatine Ethyl Ester Malate or CEM3.

H.    Defendants and Defendants' counsel recognize the expense and length of continued proceedings necessary to continue the Action through trial and through possible appeals. Defendants also recognize that the expense and time spent pursuing this Action has and will further detract from resources that may be used to run Defendants' business. While Defendants deny any wrongdoing or liability arising out of any of the facts or conduct alleged in the Action and believe that they have valid defenses to Plaintiffs' claims, Defendants have determined that the settlement is fair, adequate, and reasonable and that it is in the best interests of the Settlement Class.

I.    BSN has disclosed the terms of this Agreement to Wachovia Bank, National Association. BSN has also disclosed information regarding its financial condition to Plaintiffs in formal and informal discovery.

J.    Based on the foregoing, which the Parties expressly incorporate as material terms of the Agreement, it is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising from or related to the Action which exist between the Parties. Therefore, it is the intention of the Parties that this Agreement shall constitute a full and complete settlement and release, which release includes in its effect all present and former parent companies, shareholders, officers, directors, employees, agents, servants, registered representatives, attorneys, insurers, affiliates, and successors and assigns of Defendants with respect to all claims alleged by Plaintiffs in the operative complaint.

### III.    TERMS OF SETTLEMENT

In consideration of the mutual covenants and promises set forth herein, and subject to Court approval, the Parties agree as follows:

A.    Certification of Class: For settlement purposes only, and without any finding or admission of any wrongdoing or fault by Defendants, and solely pursuant to the terms of this Agreement, the Parties consent to and agree to the establishment of a conditional certification of the Settlement Class, pursuant to Fed. R. Civ. P. 23(b)(3) and 23(b)(2).

B.    Certification is Conditional: This certification is conditional on the Court's approval of this Agreement. In the event the Court does not approve all terms of the Agreement, then certification of the Settlement Class shall be void and this Agreement and all orders entered in connection therewith, including but not limited to any order conditionally certifying the Settlement Class, shall become null and void and shall be of no further force and effect and shall not be used or referred to for any purposes whatsoever in the Action or in any other case or controversy. And, in such an event, this Agreement and all negotiations and proceedings related thereto shall be deemed to be without prejudice to the rights of any and all parties hereto, who shall be restored to their respective positions as of the date of this Agreement, and Defendants shall not be deemed to have waived any opposition or defenses it has to any aspect of the claims asserted herein or to whether those claims are amenable to class-based treatment.

C.    Release: Upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, Plaintiffs and the Settlement Class shall fully release and discharge Defendants and all present and former parent companies, shareholders, officers, directors, employees, agents, servants, registered representatives, attorneys, insurers, affiliates, and successors, personal representatives, heirs and assigns, retailers, suppliers, distributors, endorsers, consultants, and any and all other entities or persons upstream and downstream in the production/distribution channels (together, the "Discharged Parties") from all claims, demands, actions, and causes of action of any kind or nature whatsoever, whether at law or equity, known or unknown, direct, indirect, or consequential, liquidated or unliquidated, foreseen or unforeseen,

developed or undeveloped, arising under common law, regulatory law, statutory law, or otherwise, including but not limited to unjust enrichment, theft by deception, fraud, violation of California Business and Professions Code Sections 17200 et seq. and 17500 et seq., and any related or similar state consumer protection statutes, claims for restitution, disgorgement of profits, injunctive and declaratory relief, arising out of or relating to the content of any of the CEM3 Products or the advertising, packaging, labeling, promotion, sale and distribution of the CEM3 Products, including all claims which were alleged or which could have been alleged by Plaintiffs, Class Counsel, the Settlement Class and/or any Settlement Class Member against the Discharged Parties in the Action, whether those claims are asserted individually or on a class-wide basis. However, this definition expressly excludes claims for personal injury.

Except as to such rights or claims as may be created by this Agreement, Defendants and plaintiffs Rivera and Abell (as individuals and not as representatives of the class) shall fully release and discharge each other and the Discharged Parties from any and all claims, defenses, cross-claims, of every nature whatsoever, whether known, unknown, fixed or contingent, which Defendants, Rivera and/or Abell, and each of them, at any time heretofore had, owned, held or claimed to have, own or hold against each other or any of the Discharged Parties.

In addition, the Parties mutually release Reed Smith LLP, Robinson, Calcagnie & Robinson Inc., and Call, Jensen & Ferrell, APC and all of their representatives from any and all claims, known and unknown related to the prosecution or defense of the Action.

      D.    Compensation to the Settlement Class

      1.    Rebates:    Within sixty calendar (60) days of the Effective Date, Defendants shall: (a) for a period of no less than thirty-six (36) months, (i) affix a $5.00 mail-in rebate coupon to each bottle of Cellmass sold in the United States; and (ii) affix a $3.00 mail-in rebate coupon to each bottle of Nitrix sold in the United States; and (b) for a period of not less than twenty-four (24) months, affix a $3.00 mail-in rebate coupon to each bottle of N.O.-Xplode sold in the United States (collectively, the "Rebates"). With each redeemed coupon submitted, each consumer shall select and receive a free sample pack ($2.15 retail value)

7

of either Cellmass, N.O.-Xplode or, at the discretion of BSN, any other BSN product that BSN elects to make available. Rebates shall be capped at $50.00 per customer per year. The Parties estimate based upon historical retail sales of Defendants' products, this portion of the settlement could amount to approximately $23,500,000.00 of value to the Settlement Class when fully utilized. If, by April 30, 2010, total redemption of the rebates does not exceed $2,500,000.00 (including the retail value of all sample packs provided), Defendants shall offer, for the following 12 months, a 25% discount on all direct retail sales of any BSN product (excluding apparel, liquid beverages, sample packs, and promotional items or programs) to all of their customers. The Parties estimate based on historical retail sales of Defendants' products, this portion of the settlement could amount to approximately $18,600,000.00 of value to the Settlement Class when fully utilized. The 25% discount shall be taken from the standard retail price and may not be used in conjunction with other discounts or promotions that may be in effect.

      2.   <u>Refunds</u>:   Authorized Claimants will be provided a refund check of $15.00 for each CEM3 Product purchased during the Class Period. Cash refunds will be limited to a maximum of $30.00 per Authorized Claimant. Defendants' obligation to pay cash refunds is limited to the payment of valid claims received and subject to a maximum of $1,500,000.00.

      3.   <u>Charitable Donation</u>:   Defendants will donate a total of $1,000,000.00 (retail price) worth of BSN products to charitable causes selected by Defendants and approved by Class Counsel over the next five years, with an annual donation obligation of no less than $200,000.00, provided that any obligation to make annual donations shall terminate once the value of the total donations reach $1,000,000.

      E.   <u>Enhancement for Class Representatives</u>:   Class Counsel agrees that it will apply to the Court for fee enhancements, to the Class Representative Michael Rivera in an amount not to exceed $12,500 and Daniel Abell in an amount not to exceed $6,250 for each Class Representative, for their participation as the Class Representatives, for taking on the risks of litigation, and for settlement of their individual claims as Settlement Class Members in this

8

Action.    Defendants agree not to oppose Class Representatives' joint motion for fee enhancements, provided the requested fee enhancements do not exceed the amounts set forth herein.    Class Representatives and their counsel agree not to move for a fee enhancement exceeding the amounts set forth herein.    Defendants shall pay the lesser of $18,750 (with a maximum of $12,500 and $6,250 to Michael Rivera and Daniel Abell, respectively), or the fee enhancements authorized by the Court within ten (10) calendar days of the Effective Date.

   F. <u>Attorneys' Fees and Costs</u>: Class Counsel agrees that it will apply to the Court for attorneys' fees, costs and expenses in an amount not to exceed $6,250,000.00.    Defendants agree not to oppose Class Counsel's motion for attorneys' fees and costs, provided the requested attorneys' fees and costs do not exceed $6,250,000.00.    Plaintiffs and Class Counsel agree not to move for attorneys' fees and costs exceeding $6,250,000.00.    Defendants shall pay the lesser of $6,250,000.00 or the attorneys' fees and costs awarded by the Court (the "Fee Disbursement") to a segregated interest bearing escrow account within ten (10) calendar days of the entry of the Court's final order awarding fees to Class Counsel with instructions that the Fee Disbursement and any interest generated thereon shall be distributed from the escrow account to Class Counsel immediately after the Effective Date.    The Fee Disbursement shall remain in the interest bearing escrow account until the Effective Date.

   G. <u>Injunctive Relief</u>: Defendants stipulate to a permanent injunction prohibiting Defendants from selling, marketing, advertising, and/or manufacturing any products claimed to contain CEM3. BSN no longer manufactures, advertises or promotes products including CEM3 in the formula, and has reformulated each of the Products. Defendants agree, without admitting any liability or fault, that the filing and litigation of the Action contributed, in part, to the decisions to accelerate the reformulation of the Products and to refrain from using or promoting CEM3 in the Products in the future.

## IV. ADMINISTRATION OF SETTLEMENT

   A. The Parties have agreed to the appointment of a Settlement Administrator who will be identified and retained within ten (10) calendar days of the execution of this Agreement.

The Settlement Administrator's duties to administer the settlement include: (1) preparing and publishing class notice; (2) establishing and maintaining a website for notification and Claim Form distribution; (3) establishing a telephone number and responding to inquiries and requests for Claim Forms and assistance from Settlement Class Members; (4) distributing Claim Forms; (5) receiving and independently reviewing the Claim Forms submitted by Settlement Class Members for the purpose of verifying any amounts due to Authorized Claimants; (6) receiving and serving upon Class Counsel and Defendants' counsel any written objections or opt-out statements; (7) reporting, in summary or narrative form, to Class Counsel, Defendants' Counsel, and the Court, regarding the completion of its tasks identified within this Agreement; and (8) carrying out other related tasks in accordance with the terms of this Settlement Agreement, including printing and sending the settlement checks to Settlement Class Members.

B.    Defendants shall pay the Settlement Administrator's costs and fees associated with administering this Agreement, including all costs associated with notice to Settlement Class Members.

C.    The Settlement Administrator shall be granted reasonable access to Defendants' records in order to perform its duties.

D.    All disputes relating to the Settlement Administrator's ability and need to perform its duties shall be referred to the Court, if necessary, which will have continuing jurisdiction over the terms and conditions of this Agreement, until all payments and obligations contemplated by the Agreement have been fully carried out.

V.    **NOTICE TO THE SETTLEMENT CLASS**

A.    Class Notice: Subject to Court approval, the Parties agree that after entry of the Preliminary Approval order, Defendants shall provide the Settlement Class with notice of the settlement by the following methods:

1.    Mail Or Electronic Mail: No later than twenty (20) calendar days following entry of the Preliminary Approval order, Defendants will mail or email to each

member of the Settlement Class for whom Defendants have a mailing or email address, the Full Class Notice;

      2.     Internet Notice: No later than twenty (20) calendar days following entry of the Preliminary Approval order, the Claims Administrator shall create a website dedicated to this settlement displaying the Full Class Notice and downloadable Claim Forms, until the Claims Deadline; and

      3.     Publication: Defendants will publish the Publication Notice on two occasions in the notices section of the national edition of USA Today. The Publication Notice will initially be published not later than thirty (30) calendar days after entry of the Preliminary Approval order and a second publication will occur not later than forty-five (45) calendar days after entry of the Preliminary Approval order.

      B.     Declaration of Compliance: Within fourteen (14) calendar days of the Claims Deadline, the Settlement Administrator shall provide the Parties with a declaration attesting to completion of the notice process set forth in this section.

## VI.     CLAIMS PROCESS/CLAIMS ADMINISTRATION

      A.     Claim Form: Settlement Class Members may obtain a Claim Form from the Settlement Administrator by calling the toll free number contained in the Full Class Notice or by visiting the website identified in the Full Class Notice and Publication Notice. Each Claim Form will include instructions and the date the form must be returned in order for the claim to be considered eligible under the settlement.

      B.     Submission of Claim Form: All Claim Forms shall be signed under penalty of perjury and sent directly to the Settlement Administrator at the address indicated on the Claim Form. All claim forms shall be accompanied by a proof of purchase for each container claimed, in the form of a retail or online receipt. The Settlement Administrator shall review the Claim Forms and make any calculations of payments to be distributed to the Settlement Class Member.

      C.     Validity of Submitted Claims: No Claim Form will be deemed valid if it is not signed by the Settlement Class Member under penalty of perjury, is not postmarked on or

before the Claims Deadline, and does not contain the requested information. Notwithstanding the above, Class Counsel and Defendants may, but need not, seek permission from the Court to consider late-filed Claim Forms that are received prior to the distribution of settlement funds to the Settlement Class. Any Settlement Class Members who fail to submit valid and timely Claim Forms shall be bound by all terms of the settlement and any judgment entered in this Action, and will be barred from receiving any portion of the Common Fund.

D.    Deficiencies in Submitted Claim Forms:    In the event a Claim Form is submitted timely but is deficient in one or more aspects, the Settlement Administrator shall return the Claim Form to the claimant with a letter explaining the deficiencies. The claimant shall have fourteen (14) calendar days from the date of the deficiency notice to correct the deficiencies and resubmit the Claim Form. The envelope containing the resubmitted Claim Form must be postmarked within fourteen (14) calendar days of the date of the deficiency notice to be considered timely unless there is a showing to the court of good cause for additional time. No claimant will be provided a second notice of deficiency, unless the Court finds good cause.

E.    Distribution of Refund Checks to Authorized Claimants:    Upon completion of its calculation of payments, and within seven (7) calendar days following the Claims Deadline, the Settlement Administrator shall provide Class Counsel and Defendants' Counsel with a report listing the amount of all refunds to be made to each Settlement Class Member.

F.    Issuance of Settlement Proceeds:    The Settlement Administrator is responsible for issuing the refunds to Authorized Claimants. Refunds will be mailed by the Settlement Administrator within twenty-one (21) calendar days of the Effective Date. A declaration of payment will be filed by the Settlement Administrator with the Court and provided to the Parties within ten (10) calendar days of mailing the settlement proceeds.

## VII.    PROCEDURES FOR OBJECTING TO OR REQUESTING EXCLUSION FROM SETTLEMENT

A.    Objections:    Only Settlement Class Members may object to the settlement. Those who wish to object to the settlement must do so in writing. Written objections must (1)

state the basis of the objection and all required information from the Full Class Notice, (2) be mailed to the Settlement Administrator, Class Counsel, and Defendants' counsel, and (3) be filed with the Court by the Objection/Exclusion Deadline. No Settlement Class Member shall be entitled to be heard at the final fairness hearing (whether individually or through separate counsel) or to object to the settlement, and no written objections or briefs submitted by any Settlement Class Member shall be received or considered by the Court, unless written notice of the Settlement Class Member's intention to appear at the final fairness hearing, and copies of any written objections or briefs, have been timely filed with the Court and served on counsel for the Parties and the Settlement Administrator on or before the Objection/Exclusion Deadline.

       1.     <u>Timeliness of Objections</u>: The date of the postmark on the mailing envelope shall be the exclusive means used to determine whether an objection and/or notice of intention to appear has been timely submitted. In the event that the postmark is illegible, the objection and/or notice to appear shall be deemed untimely unless it is received by the Settlement Administrator within two (2) calendar days of the Objection/Exclusion Deadline. Settlement Class Members who fail to timely file and serve a written objection in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the settlement.

       2.     <u>Response to Objections</u>: Class Counsel and/or Defense Counsel may, at least two (2) business days (or such other number of days as the Court shall specify) before the final fairness hearing, file any responses to any written objections submitted to the Court by Settlement Class Members in accordance with this Agreement.

       B.     <u>Procedure for Requesting Exclusion</u>: Settlement Class Members who wish to opt out of this settlement must submit a written statement within the Objection/Exclusion Deadline. The Full Class Notice shall provide mandatory language for the request for exclusion. Requests to opt-out that do not include all required information and/or that are not submitted on a timely basis, will be deemed null, void, and ineffective. The date of the postmark on the mailing envelope shall be the exclusive means used to determine whether a Settlement Class Member's

13

opt-out/exclusion request has been timely submitted. In the event that the postmark is illegible, the opt-out/exclusion request shall be deemed untimely unless it is received by the Settlement Administrator within two (2) calendar days of the Objection/Exclusion Deadline. Any Settlement Class Member who properly opts out of the Settlement Class using this procedure will not be entitled to any portion of the Common Fund, will not be bound by the settlement, and will not have any right to object, appeal, or comment thereon. Settlement Class Members who fail to submit a valid and timely request for exclusion on or before the Objection/Exclusion Deadline shall be bound by all terms of the settlement and any final judgment entered in this litigation if the settlement is approved by the Court, regardless of whether they ineffectively or untimely requested exclusion from the settlement.

C.  Notice of Objections and/or Requests for Exclusion:  The Settlement Administrator shall on a daily basis (1) date stamp all original opt-out/request for exclusion statements and objection statements it receives; and (2) serve copies of same on Class Counsel and Defendants' counsel no later than seven (7) calendar days after the deadline for submission of the documents. The Settlement Administrator shall inform Class Counsel and Defendants' counsel of any such documents received that were untimely submitted.

D.  No Solicitation of Settlement Objections or Exclusions:  The Parties agree to use their best efforts to carry out the terms of this Settlement. At no time will any of the Parties or their counsel seek to solicit or otherwise encourage any Settlement Class Members to object to the settlement or request exclusion from participating as a Settlement Class Member, or encourage any Settlement Class Member to appeal from the final judgment.

VIII.  **RELEASE OF CLAIMS**

The Parties, and each of them, have read, understood, and consulted with their attorneys and have been fully advised by them as to the contents and meaning of section 1542 of the *Civil Code* of California, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of

14

> executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Parties hereby knowingly and voluntarily waive and relinquish all rights and benefits afforded by California *Civil Code* section 1542, and by any comparable state or federal or foreign statute, law, right, rule or legal principle which may be applicable hereto. The Parties hereby agree and acknowledge that this waiver is an essential term of this Agreement without which the consideration given herein would not have been given.

## IX.    DUTIES OF THE PARTIES PRIOR TO FINAL COURT APPROVAL

The Parties shall promptly submit this Agreement to the Court in support of Plaintiffs' Motion for Preliminary Approval and determination by the Court as to its fairness, adequacy, and reasonableness. Promptly upon execution of this Agreement, the Parties shall apply to the Court for the entry of a Preliminary Approval order substantially in the following form:

A.    Scheduling a final fairness hearing on the question of whether the proposed settlement should be finally approved as fair, reasonable, and adequate as to the members of the class;

B.    Approving as to form and content the Publication Notice and Full Class Notice;

C.    Approving as to form and content the proposed Claim Form and instructions;

D.    Directing publication of the Publication Notice, and the method and frequency of class notice;

E.    Preliminarily approving the settlement;

F.    Preliminarily and conditionally  certifying the Settlement Class for settlement purposes;

G.    Preliminarily approving the settlement administration services;

H.    Staying all proceedings in the Action, and enjoining the prosecution of any other individual or Class claims.

15

I.    Providing that, in the event the proposed settlement set forth in this Agreement is not approved by the Court, or in the event that this Agreement becomes null and void pursuant to its terms, this Agreement and all orders entered in connection therewith, including but not limited to any order conditionally certifying the Settlement Class, shall become null and void and shall be of no further force and effect and shall not be used or referred to for any purposes whatsoever in the Actions or in any other case or controversy; and that in such an event, this Agreement and all negotiations and proceedings related thereto shall be deemed to be without prejudice to the rights of any and all parties hereto, who shall be restored to the respective positions as of the date of this Agreement. In the event the Court does not enter the Preliminary Approval order described herein, or decides to do so only with modifications, then this entire Agreement shall become null and void, unless the parties hereto agree in writing to proceed with this Agreement as modified.

**X.    DUTIES OF THE PARTIES FOLLOWING FINAL COURT APPROVAL**

Class Counsel will submit a proposed final order and judgment at the final approval hearing, to include:

A.    Approving the settlement, adjudging the terms thereof to be fair, reasonable and adequate, and directing consummation of its terms and provisions;

B.    Approving Class Counsel's application for the requested award of attorneys' fees and costs and the Class Representatives application for fee Enhancements; and

C.    Dismissing the Action on the merits and with prejudice and permanently barring the Parties and Settlement Class Members from prosecuting the other Parties and their officers, attorneys, directors, shareholders, employees, agents, retailers, suppliers, distributors, endorsers, consultants, and any and all other entities or persons upstream and downstream in the production/distribution channels in regard to the CEM3 Products, from any and all claims, but specifically excluding personal injury claims, asserted or that could have been asserted in this Action, and all claims, causes of action, damages, costs, expenses, losses of any nature, and

demands arising from or having their origin in or relating to the facts and occurrences alleged in this Action, whether in law or equity, known or unknown, before any court or similar body.

## XI.    PARTIES' AUTHORITY

The signatories represent that they are fully authorized to enter into this Agreement and bind the Parties to its terms and conditions.

## XII.    MUTUAL FULL COOPERATION

A.    The Parties agree to cooperate fully with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents and the taking of such other action as may reasonably be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement.    As soon as practicable after execution of this Agreement, Class Counsel, with the assistance and cooperation of Defendants and their counsel, shall take all necessary steps to secure the Court's final approval of this Agreement.

B.    Defendants agree that Defendants will not attempt to discourage Settlement Class Members from filing claims and will encourage Settlement Class Members to participate when asked about the settlement.

## XIII.    NO ADMISSION

This Agreement is not to be construed or deemed as an admission of liability, culpability, negligence, or wrongdoing on the part of Defendants.  Defendants deny all liability for claims asserted in the Action. Each of the Parties has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.    This Agreement is a settlement document and shall, pursuant to Cal. Evid. Code §§ 1151, 1152, and Fed. R. Evid. 408 be inadmissible in evidence in any proceeding in order to establish liability. The preceding sentence shall not apply to an action or proceeding to approve or enforce this Agreement.

## XIV.    ENFORCEMENT ACTIONS

DC01/BLYND/374585.5

17

46

In the event that one or more of the Parties to this Agreement institutes any legal action, arbitration, or other proceeding against any other party or parties to enforce the provisions of this Agreement or to declare rights and/or obligations under this Agreement, the successful Party or Parties shall be entitled to recover from the unsuccessful Party or Parties reasonable attorneys' fees and costs, including expert witness fees incurred in connection with any enforcement actions.

### XV.    NOTICES

Unless otherwise specifically provided, all notices, demands or other communications in connection with this Agreement shall be in writing and shall be deemed to have been given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

| For The Class | For Defendants |
| --- | --- |
| James B. Hardin<br>Call, Jensen & Ferrell<br>610 Newport Center Dr., Suite 700<br>Newport Beach, CA 92660 | Brent V. Schillage<br>Bio-Engineered Supplements & Nutrition, Inc.<br>5901 Broken Sound Parkway NW<br>6th Floor<br>Boca Raton, FL 33487 |
|  | Robert D. Phillips, Jr.<br>Reed Smith LLP<br>255 S. Grand Ave., Suite 2900<br>Los Angeles, CA 90071-1514 |

### XVI.    CONSTRUCTION

The Parties agree that the terms and conditions of this Agreement are the result of lengthy, intensive arms-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his or its counsel participated in the drafting of this Agreement.

### XVII.    MATERIAL TERMS; CAPTIONS

Each term of this Agreement is a material term of the Agreement not merely a recital, and reflects not only the intent and objectives of the parties but also the consideration to be exchanged by the Parties hereunder.

Paragraph titles or captions are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any of its provisions.

### XVIII. INTEGRATION CLAUSE

This Agreement contains the entire agreement between the Parties relating to the settlement, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are extinguished.

### XIX. PUBLIC STATEMENTS

The Parties and their counsel shall issue no public statements with respect to the Action or the Settlement Agreement except as required by law, until the Court has given final approval of the settlement. Upon such final approval, public statements made by counsel about the settlement will be truthful, accurate, non-defamatory, and consistent with the content and tone of the papers publicly filed with the Court in this Action. Counsel shall not make, publish or circulate or cause to be made, publish or circulate any statements that represent or suggest that this Settlement Agreement or any Order by the Court regarding this Settlement Agreement represents or implies an admission by any Defendant of any liability or wrongdoing, or a finding by the Court of liability or wrongdoing.

### XX. NON-EVIDENTIARY USE

Neither this Agreement nor any of its terms shall be offered or received into evidence in the Action, or in any other action or proceeding; provided, however, that nothing contained in this section "non-evidentiary use" shall prevent this agreement from being used, offered, or received in any proceeding to enforce, construe, or finalize this Agreement.

### XXI. NO COLLATERAL ATTACK

DC01/BLYND/374585.5

This Agreement shall not be subject to collateral attack by any Settlement Class Member or any recipient of the notices to the Settlement Class after the judgment and dismissal is entered. Such prohibited collateral attacks shall include claims made before the final fairness and approval hearing that a Settlement Class Member's settlement amount was improperly calculated or adjusted or that the Settlement Class Member failed to receive timely notice of the procedure for disputing the calculation of the individual settlement amount or failed to submit a timely dispute letter for any reason.

## XXII. AMENDMENTS

The terms and provisions of this Agreement may be amended only by a written agreement, which is both (1) signed by the Parties who have executed this Agreement and (2) approved by the Court.

## XXIII. ASSIGNMENTS

None of the rights, commitments, or obligations recognized under this Agreement may be assigned by any party or Settlement Class Member without the express written consent of each other Party hereto. The representations, warranties, covenants, and agreements contained in this Agreement are for the sole benefit of the Parties and Settlement Class Members under this Agreement, and shall not be construed to confer any right or to avail any remedy to any other person.

## XXIV. GOVERNING LAW

This Agreement shall be governed by, construed, and interpreted and the rights of the Parties determined in accordance with the laws of the State of California, irrespective of the State of California's choice of law principals.

## XXV. BINDING ON ASSIGNS

This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

## XXVI. CLASS COUNSEL SIGNATORIES

It is agreed that because the Settlement Class appears to be so numerous, it is impossible or impractical to have each member of the class execute this Agreement. The notice plan set forth herein will advise Settlement Class Members of all material terms of this Agreement, including the binding nature of the releases and such shall have the same force and effect as if this Agreement were executed by each Settlement Class Member.

### XXVII.  COUNTERPARTS

This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties and the Settlement Class.

**IN WITNESS WHEREOF**, the Parties have duly executed this Agreement as of the dates indicated below:

**CLASS REPRESENTATIVES AND CLASS COUNSEL:**

DATED: April        , 2009                  MICHAEL RIVERA


_____
Individually   and   on   behalf   of   the
Settlement Class

DATED: April        , 2009                  DANIEL ABELL


_____
Individually,   and   on   behalf   of   the
Settlement Class

DATED: April _____, 2009                  CALL, JENSEN & FERRELL, APC


_____
By:   JAMES B. HARDIN
Attorneys   for   the   Plaintiffs   and   the
Settlement Class

21

DATED: April _____, 2009                    ROBINSON  CALCAGNIE  &  ROBINSON
                                            INC.


                                            _____
                                            By:  MARK P. ROBINSON
                                                 Attorneys  for  the  Plaintiffs  and  the
                                                 Settlement Class


**DEFENDANTS AND COUNSEL FOR DEFENDANTS:**

DATED: April _____, 2009                    CHRISTOPHER  FERGUSON


                                            _____

                                            _____
DATED: April _____, 2009                    BIO-ENGINEERED  SUPPLEMENTS  &
                                            NUTRITION, INC.


                                            _____
                                            By:  _____


DATED: April _____, 2009                    REED SMITH


                                            _____
                                            By:
                                                 Attorneys for Defendants

It is agreed that because the Settlement Class appears to be so numerous, it is impossible or impractical to have each member of the class execute this Agreement. The notice plan set forth herein will advise Settlement Class Members of all material terms of this Agreement, including the binding nature of the releases and such shall have the same force and effect as if this Agreement were executed by each Settlement Class Member.

## XXVII. COUNTERPARTS

This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties and the Settlement Class.

**IN WITNESS WHEREOF,** the Parties have duly executed this Agreement as of the dates indicated below:

**CLASS REPRESENTATIVES AND CLASS COUNSEL:**

DATED: April ___ , 2009          MICHAEL RIVERA

_____
Individually and on behalf of the Settlement Class

DATED: April ___ , 2009          DANIEL ABELL

_____
Individually, and on behalf of the Settlement Class

DATED: April ____, 2009          CALL, JENSEN & FERRELL, APC

By: ~~JAMES B. HARDIN~~
Attorneys for the Plaintiffs and the Settlement Class

It is agreed that because the Settlement Class appears to be so numerous, it is impossible or impractical to have each member of the class execute this Agreement. The notice plan set forth herein will advise Settlement Class Members of all material terms of this Agreement, including the binding nature of the releases and such shall have the same force and effect as if this Agreement were executed by each Settlement Class Member.

## XXVII. COUNTERPARTS

This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties and the Settlement Class.

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the dates indicated below:

CLASS REPRESENTATIVES AND CLASS COUNSEL:

DATED: April      , 2009                    MICHAEL RIVERA

                                            _____
                                            Individually and on behalf of the
                                            Settlement Class

DATED: April      , 2009                    DANIEL ABELL

                                            _____
                                            Individually, and on behalf of the
                                            Settlement Class

DATED: April _____, 2009                    CALL, JENSEN & FERRELL, APC

                                            _____
                                            By:  JAMES B. HARDIN
                                            Attorneys for the Plaintiffs and the
                                            Settlement Class

IX:DI/BLYND/374585.5                    21

It is agreed that because the Settlement Class appears to be so numerous, it is impossible or impractical to have each member of the class execute this Agreement. The notice plan set forth herein will advise Settlement Class Members of all material terms of this Agreement, including the binding nature of the releases and such shall have the same force and effect as if this Agreement were executed by each Settlement Class Member.

## XXVII.  COUNTERPARTS

This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties and the Settlement Class.

**IN WITNESS WHEREOF,** the Parties have duly executed this Agreement as of the dates indicated below:

**CLASS REPRESENTATIVES AND CLASS COUNSEL:**

DATED: ~~April~~ 2009
       May 30

                                MICHAEL RIVERA

                                _____
                                Individually and on behalf of the
                                Settlement Class

DATED: ~~April~~ 30th 2009
       May

                                DANIEL ABELL

                                _____
                                Individually, and on behalf of the
                                Settlement Class

DATED: April ____, 2009

                                CALL, JENSEN & FERRELL, APC

                                _____
                                By:  JAMES B. HARDIN
                                     Attorneys for the Plaintiffs and the
                                     Settlement Class

DATED: ~~April~~ JUNE 8, 2009

ROBINSON, CALCAGNIE & ROBINSON INC.

By: MARK P. ROBINSON
    Attorneys for the Plaintiffs and the Settlement Class

**DEFENDANTS AND COUNSEL FOR DEFENDANTS:**

DATED: April ____, 2009

CHRISTOPHER FERGUSON

DATED: April ____, 2009

BIO-ENGINEERED SUPPLEMENTS & NUTRITION, INC.

By: _____

DATED: April ____, 2009

REED SMITH

By: _____
    Attorneys for Defendants

DATED: June ____, 2009

ROBINSON CALCAGNIE & ROBINSON INC.

_____

By:   MARK P. ROBINSON
      Attorneys for the Plaintiffs and the
      Settlement Class

**DEFENDANTS AND COUNSEL FOR DEFENDANTS:**

DATED: June 5, 2009

CHRISTOPHER FERGUSON

_____

By:

DATED: June 5, 2009

BIO-ENGINEERED SUPPLEMENTS & NUTRITION, INC.

_____

By:

DATED: June 5, 2009

REED SMITH

_____

By:   Thomas A. Evans
      Attorneys for Defendants

DCO1/HLYND/374585.5

## CLAIM FORM

*Rivera v. Bio-Engineered Supplements & Nutrition, Inc. et al.*
United States District Court Case No. SACV07-1306 JVS

**MUST BE POSTMARKED OR DELIVERED NO LATER THAN [INSERT DATE].**

**I.**     **PERSONAL INFORMATION.** Please legibly print the following information:

Name (first, middle and last): _____

Residential Street Address: _____

City, State, Zip Code: _____

**II.**     **QUALIFYING INFORMATION.** I declare the following:

1.     I purchased Cellmass, Nitrix, and/or N.O.-Xplode products labeled as containing Creatine Ethyl Ester Malate or CEM3 (the "CEM3 Products") in the United States for personal use from November 6, 2003 through [insert date of Preliminary Approval].

2.     I understand that I am entitled to a refund check in the amount of up to $15.00 for each CEM3 Product purchased during the qualifying period up to a maximum refund of $30.00.

3.     Enclosed with this form is a receipt from a retail store or online retailer for my purchase of the CEM3 Products

*The Claims Administrator may require proof to verify the accuracy of your claim. Please retain copies of any and all documents that may support your claim.*

FILL OUT THIS FORM AS COMPLETELY AS POSSIBLE AND RETURN TO THE CLAIMS ADMINISTRATOR WITH YOUR PURCHASE RECEIPTS AT [INSERT CONTACT INFORMATION OF CLAIMS ADMINISTRATOR].

**I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.**

Dated: _____     Signature: _____

**Exhibit A**

**NOTICE OF CLASS CERTIFICATION AND SETTLEMENT OF CLASS ACTION**

To:    All persons who purchased a Bio-Engineered Supplements & Nutrition, Inc. ("BSN") Product labeled as containing "Creatine Ethyl Ester Malate" or "CEM3" including, but not limited to, "Cellmass," "Nitrix," and "N.O.-XPLODE" in the United States, its territories, or at any United States military facility or exchange for personal use from November 6, 2003, through [INSERT DATE OF PRELIMINARY APPROVAL].

You may be a class member in a class action lawsuit known as *Rivera v. Bio-Engineered Supplements & Nutrition, Inc. et al.*, Case No. SACV07-1306 JVS (the "Action"), in the United States District Court for the Central District of California.

**IF YOU ARE A MEMBER OF THIS CLASS OF PERSONS, YOU SHOULD READ THIS NOTICE CAREFULLY BECAUSE IT WILL AFFECT YOUR RIGHTS.**

The purpose of this Notice is to advise you that a proposed settlement of the Action has been reached. As part of the proposed settlement, class members who submit valid claim forms with proof of purchase are entitled to, among other things, a refund check of $15.00 for each CEM3 product purchased during the class period, with a maximum refund limit of $30.00.

**I.    NATURE OF THE ACTION**

Defendant BSN develops, manufactures and distributes nutritional supplements. Plaintiffs filed a class action lawsuit against, among others, BSN, alleging that BSN made misrepresentations on its product labels and other marketing material with regard to the existence of "CEM3" in BSN's products.

BSN denies any wrongdoing and any liability whatsoever, and no court or other entity has made any judgment or other determination of any liability.

The Parties have determined that it is in their best interests to settle the Action on the terms generally discussed below in order to avoid the expense, inconvenience, and interference with ongoing business operations of further litigation.

The Honorable James V. Selna of the United States District Court, Central District of California, has determined that the Action should be certified as a class action for settlement purposes only, with Plaintiffs as the class representatives, and has granted preliminary approval of the settlement, subject to a final fairness hearing discussed below.

**II.    THE PROPOSED SETTLEMENT**

BSN has agreed to refrain from selling, marketing, advertising, and/or manufacturing any products claimed to contain CEM3. BSN has also agreed to, for a period of three years, affix a $5.00 mail-in rebate coupon to each bottle of Cellmass sold in the United States and affix a $3.00 mail-in rebate coupon to each bottle of Nitrix sold in the United States. For a period of two years, BSN has agreed to affix a $3.00 mail-in rebate coupon to each bottle of

**Exhibit B**

- 1 -

N.O.-Xplode sold in the United States (collectively, the "Rebates"). With each redeemed Rebate, consumers may choose to also receive a free sample pack ($2.15 retail value) of either Cellmass or N.O.-Xplode. Redemptions shall be capped at $50.00 per customer per year. If, by April 30, 2010, total redemption of the Rebates does not exceed $2,500,000.00, BSN has agreed to offer for 12 months, a 25% discount on all direct retail sales of any BSN product (excluding apparel, liquid beverages, sample packs, and promotional items or programs) to all of their customers.

Additionally, BSN has agreed to provide refunds for Authorized Claimants who submit valid claim forms and purchase receipts Authorized Claimants will be provided a refund check of $15.00 for each CEM3 product purchased during the class period. Cash refunds will be limited to a maximum of $30.00 per authorized claimant. BSN's obligation to pay cash refunds is limited to the payment of refunds actually claimed and subject to a maximum of $1,500,000.00.

Finally, BSN has agreed to donate a total of $1,000,000.00 worth of BSN products to charitable causes selected by BSN and approved by Class Counsel over the next five years.

## III.    DISMISSAL OF THE ACTION AND RELEASE OF CLAIMS

If the Court approves the proposed settlement, it will enter a dismissal of the Action with prejudice as to all class members. All class members who do not validly and timely request to be excluded from the proposed settlement will be forever barred from prosecuting their own lawsuits and deemed to have released, among others, BSN and each of its direct or indirect parents, wholly or majority owned subsidiaries, affiliated and related entities, predecessors, successors and assigns, partners, privities, and any of their present and former directors, officers, employees, shareholders, agents, representatives, attorneys, accountants, insurers, and all persons acting by, through, under or in concert with them, or any of them, from all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent, which they have or may have arising out of or relating to any of the acts, omissions or other conduct that have or could have been alleged or otherwise referred to in the Action.

## IV.    FAIRNESS HEARING

On _____ at _____.m., a hearing will be held on the fairness of the proposed settlement. At the hearing, the Court will entertain any objections and arguments concerning the proposed settlement's fairness. The hearing will take place at [411 West Fourth Street, Santa Ana, California].

## V.    HOW TO RECEIVE YOUR REFUND

To be entitled to participate in the refund portion of the settlement, class members must accurately complete a Claim Form and deliver that form with a retail store or online receipt to the Claims Administrator no later than [INSERT]:

**BSN Claims Administrator**
**[INSERT]**

If you do not submit a valid and timely Claim Form, you will not be able to participate in the refund portion of settlement. The delivery date is deemed to be the date the form is deposited in the U.S. Mail, postage pre-paid, as evidenced by the postmark. You may request a Claim Form from the Claims Administrator at the address above or download one at www.[INSERT].

## VI.    HOW TO OBJECT OR EXCLUDE YOURSELF FROM THE CLASS

Under the law, you have the right to exclude yourself from the class if you wish to pursue a separate lawsuit against the defendants or for any other reason or no reason at all. **If you exclude yourself from the class, you will not be entitled to participate in any recovery by the class,** and you will not be bound by the settlement.

If you desire to be excluded from the class, you must send a letter or postcard, addressed to the BSN Claims Administrator at: **[INSERT]**. Set forth your name, address, the specific BSN product(s) you purchased, the date you purchased the product(s), and state your desire to be excluded from the Class. Your request for exclusion must be postmarked no later than [INSERT].

If you wish to object to the settlement, you must file a written objection and/or a Notice of Intention to Appear with the Court, and serve such objection and/or notice on Class Counsel and BSN's Counsel by **[INSERT]** at the addresses set forth below. Any written objections and/or Notice of Intention to Appear must state: (a) the full name, address, and telephone number of the person objecting; (b) the words "Notice of Objection" or "Formal Objection;" and (c) in clear and concise terms, the legal and factual arguments supporting the objection. If you only object to the appropriateness or merits of the Action itself, then your objection will be deemed invalid. Class members who fail to make objections in the manner specified above will be deemed to have waived any objections and will be foreclosed from making any objections (whether by appeal or any other process) to the settlement. Only class members who file and serve timely written objections and/or Notices of Intention to Appear will be allowed to speak at the Fairness Hearing.

| Class Counsel | Counsel for BSN |
|---|---|
| JAMES B. HARDIN<br>MATTHEW R. ORR<br>CALL, JENSEN & FERRELL<br>A Professional Corporation<br>610 Newport Center Drive, Suite 700<br>Newport Beach, CA 92660<br>Tel: (949) 717-3000<br>Fax: (949) 717-3100 | THOMAS A. EVANS<br>REED SMITH LLP<br>1999 Harrison Street, Suite 2400<br>Oakland, CA 94612-3572<br>Tele: 510-763-2000<br>Fax: 510-273-8832 |

To be considered, the objection papers must be filed with the Court and delivered or postmarked to Class Counsel and BSN's counsel no later than **[INSERT]**. **CLASS MEMBERS WHO DO NOT TIMELY MAKE THEIR OBJECTIONS WILL BE DEEMED TO HAVE WAIVED ALL OBJECTIONS AND WILL NOT BE ENTITLED TO SPEAK AT THE FAIRNESS HEARING.** You may, but need not, enter an appearance through counsel of your choice. If you do, you will be responsible for your personal attorneys' fees and costs.

## VII.   HOW TO OBTAIN MORE INFORMATION

The foregoing information is not all-inclusive. You may obtain additional information by visiting the Office of the Clerk of the Court, 411 West Fourth Street, Santa Ana, California, during regular court hours, to inspect the pleadings and other papers maintained there.

**PLEASE DO NOT CALL OR WRITE THE CLERK OF THE COURT'S OFFICE**

Dated: _____          BY ORDER OF THE COURT
                                 HONORABLE JAMES V. SELNA
                                 UNITED STATES DISTRICT JUDGE

## SUMMARY NOTICE OF CLASS CERTIFICATION AND

## SETTLEMENT OF CLASS ACTION

TO:  All persons who, from November 6, 2003 through [date of preliminary approval] purchased a Bio-Engineered Supplements & Nutrition, Inc. ("BSN") Product labeled as containing "Creatine Ethyl Ester Malate" or "CEM3" including, but not limited to, "Cellmass," "Nitrix," and "N.O.-XPLODE" in the United States, its territories or at any U.S. Military facility or exchange.

You may be a class member in a class action lawsuit known as *Rivera v. Bio-Engineered Supplements & Nutrition, Inc. et al.*, Case No. SACV07-1306 JVS, in the United States District Court for the Central District of California. Plaintiffs in the lawsuit claimed that BSN made misrepresentations on its product labels and other materials regarding the existence of "CEM3" in the products. BSN has denied any wrongdoing or liability, and no court or other entity has made any judgment or other determination of liability.

A proposed settlement of this class action has been reached and, if you are a class member, this notice will affect your legal rights.  As part of the proposed settlement, class members may be entitled to cash refunds of up to $15.00 for CEM3 products purchased during the class period, and rebates on future purchases of BSN products from $3.00 to $5.00, and/or free samples of BSN products. BSN has also agreed to donate a total of $1,000,000 worth of BSN products to charitable causes over the next five years.

You can request a full notice of the proposed settlement and a copy of the claim form from the Claims Administrator's website at www._____ and/or Class Counsel's website at www._____.  You may also request this information from the Claims Administrator by mail:

BSN Claims Administrator

**[INSERT]**

You must act on or before **[INSERT]**, to make a claim under the proposed settlement.

You may request to be excluded from the class.  You must act on or before **[INSERT]**, to request to be excluded from the settlement or to object to the proposed settlement.  If you do not request to be excluded from the settlement

**Exhibit C**

- 1 -

62

before **[INSERT]**, the settlement and judgment will be binding on you, and you will be deemed to have released BSN from all claims described in the full notice.

If you desire to be excluded from the class, you must send a letter or postcard, addressed to the BSN Claims Administrator. Your request should include your name, address, the specific BSN product you purchased, the date of purchase, and your desire to be excluded from the Class. Your request must be postmarked no later than [INSERT]

You may enter an appearance in the case through an attorney if you desire. On [INSERT], the Court will hold a hearing on the fairness of the proposed settlement. If you wish to object to the settlement, you must file a written objection no later than [INSERT]. The full notice explains the procedures for making objections and appearing at the fairness hearing.

**Please do not address any inquiries to the Court or the Clerk of the Court.**

Dated: _____        BY ORDER OF THE COURT
                                  HONORABLE JAMES V. SELNA
                                  UNITED STATES DISTRICT JUDGE

```
 1   SCOTT J. FERRELL, Bar No. 202091
     JAMES B. HARDIN, Bar No. 205071
 2   SCOT D. WILSON, Bar No. 223367
 3   CALL, JENSEN & FERRELL
     A Professional Corporation
 4   610 Newport Center Drive, Suite 700
     Newport Beach, CA 92660
 5   Tel: (949) 717-3000; Fax: (949) 717-3100
 6   sferrell@calljensen.com
     jhardin@calljensen.com
 7
 8   MARK P. ROBINSON, Bar No. 54426
     KEVIN F. CALCAGNIE, Bar No. 108994
 9   JEOFFREY L. ROBINSON, Bar No. 97852
     ROBINSON, CALCAGNIE & ROBINSON INC.
10   620 Newport Center Drive, 7th Floor
     Newport Beach, CA 92660
11   Tel: (949) 720-1288
     Fax: (949) 720-1292
12   mrobinson@rcrlaw.net
13   kcalcagnie@rcrlaw.net
     jrobinson@rcrlaw.net
14
15   Attorneys for Plaintiffs and the Class

16                 UNITED STATES DISTRICT COURT

17                CENTRAL DISTRICT OF CALIFORNIA

18   MICHAEL RIVERA and DAN ABELL,        Case No. SACV07-1306 JVS (RNBx)
19   individually and on Behalf of All Others
     Similarly Situated,                  JOINT FILING RE FINAL
20                                         APPROVAL
                   Plaintiff,
21
22                 vs.

23   BIO-ENGINEERED SUPPLEMENTS &          Date:        November 6, 2009
     NUTRITION, INC., d/b/a BSN, INC., a   Time:        9:00 a.m.
24   Florida Corporation, CHRISTOPHER      Courtroom:   10C
     FERGUSON, an individual, and DOES 1   Judge:       Hon. James V. Selna
25   through 10, inclusive;

26                 Defendants.
27
28
```

CALL, JENSEN &
FERRELL
A PROFESSIONAL
CORPORATION

RIV03-01:573869_5.DOC: 11.4.2009

JOINT FILING RE FINAL APPROVAL

64

EXHIBIT "3"

1        This Joint Filing Regarding Final Approval (this "Filing") is hereby filed by

2    counsel for Plaintiffs Michael Rivera and Daniel Abell and the Settlement Class they

3    represent ("Plaintiffs" and/or the "Class"), and Defendants Bioengineered Supplements

4    & Nutrition, Inc. ("BSN") and Christopher Ferguson ("Ferguson" and, with BSN,

5    "Defendants" and, together with the Class, the "Parties").

6

7        WHEREAS, on October 19, 2009, this Court tentatively ruled that it was

8    prepared to enter final approval of the settlement in the above-captioned matter

9    ("Settlement") on November 6, 2009 (the "Final Approval Date") provided the

10    Parties agree to several conditions as set forth below.

11

12        WHEREFORE, the Parties, by and through their attorneys, agree as follows:

13        1.    The period in which Class members may submit claims under the

14    Settlement is extended to one-hundred (100) calendar days following the Final

15    Approval Date (the "Extended Claims Deadline"). Refunds shall be mailed by the

16    Claims Administrator no later than twenty-one (21) calendar days after the Extended

17    Claims Deadline or twenty-one (21) calendar days after the Effective Date, whichever

18    is later.

19

20        2.    No later than ten (10) calendar days following the Final Approval Date,

21    Defendants shall mail or email to each member of the Class for whom Defendants have

22    a mailing or email address, the Extended Claim Notice and Supplemental Claim Form

23    attached hereto as Exhibits "A" and "B," respectively.

24

25        3.    No later than ten (10) calendar days following the Final Approval Date,

26    Class Counsel shall submit the press release attached hereto as Exhibit "C" to the

27    following sites: newsongmedia.com, dailyjournal.com, supplementpolice.com,

28    businessweek.com,    reuters.com,    bloomberg.net,    maxperformance.com,

CALL, JENSEN &
FERRELL
A PROFESSIONAL
CORPORATION

RIV03-01:573869_5.DOC: 11.4.2009    - 1 -

JOINT FILING RE FINAL APPROVAL

classactionlitigation.com, bodybuilding.com, dowjones.com, thetribunenews.com, bloomberg.net, and womenshealthmag.com.

4.   Authorized claimants under the Settlement are entitled to a $15.00 cash refund for each CEM3 product purchased during the class period and each authorized claimant may make claim(s) for to up to $60.00 in refunds.  Authorized claimants may establish their claim through a statement submitted under penalty of perjury.

5.   No later than ten (10) calendar days following the Final Approval Date, Defendants shall create a conspicuous link on BSN's website (http://www.bsnonline.com/splash/interest.php) to the Extended Claim Notice and downloadable Supplemental Claim Form, until the Extended Claims Deadline.  The websites already created and maintained by the Claims Administrator and Class Counsel shall also display the Extended Class Notice and a downloadable Supplemental Claim Form until the expiration of the Extended Claims Deadline.

6.   As set forth in the Settlement, all rebates redeemed by Class members shall be paid out in cash as they accrue.

7.   The obligation under the Settlement to pay any and all attorneys fees and costs awarded by the Court (the "Fee Disbursement") to a segregated interest-bearing account ("Escrow") within ten (10) day of "Final Approval" (as defined under the Settlement) is modified such that Defendants shall pay the Fee Disbursement into Escrow within forty-five (45) days of the Final Approval Date, with instructions that the Fee Disbursement and all interest generated thereon (as more fully set forth below) be distributed to Class Counsel immediately following the Effective Date (as defined under the Settlement).  Interest generated from the Fee Disbursement shall include simple interest at 4.5% on the Fee Disbursement from November 16, 2009

1    (or ten days after the Final Approval Date, whichever is later), to the date the Fee

2    Disbursement is deposited by Defendants into the Escrow.

3

4        8.    As set forth in the Settlement, this Court shall continue to retain

5    jurisdiction to entertain any dispute between the Parties regarding any term of the

6    Settlement.

7

8    DATED: November 4, 2009              CALL, JENSEN & FERRELL, APC

9

10                                       /s/ James B. Hardin
11                                       By: JAMES B. HARDIN
                                             Attorneys for the Plaintiffs and the
12                                           Settlement Class

13   DATED: November 4, 2009              ROBINSON      CALCAGNIE      &
                                          ROBINSON INC.
14

15

16                                       /s/ Mark P. Robinson
                                         By: MARK P. ROBINSON
17                                           Attorneys for the Plaintiffs and the
                                             Settlement Class
18

19   DATED: November 4, 2009              REED SMITH

20

21                                       /s/ Thomas A. Evans
                                         By: Thomas A. Evans
22                                           Attorneys for Defendants

23

24

25

26

27

28

CALL, JENSEN &
FERRELL,
A PROFESSIONAL
CORPORATION

RIV03-01:573869_5.DOC: 11.4.2009                    - 3 -

JOINT FILING RE FINAL APPROVAL